In the Matter of SHARPE CONSTRUCTION COMPANY, INC., Bankrupt.

Robert F. ANDERSON, Trustee, Plaintiff,

v.

Wilson M. MacEWEN, Defendant.

Bankruptcy No. 79–136.
Complaint No. 11.

United States Bankruptcy Court, D. South Carolina.

Feb. 12, 1981.

---

Robert F. Anderson, Columbia, S.C., for plaintiff.

James M. Brailsford, III, Columbia, S.C., for defendant.

J. BRATTON DAVIS, Bankruptcy Judge.

This matter was originally before this court on the complaint by the trustee, who alleged that the bankrupt had made a transfer to the defendant which constituted a preference under § 60(a) of the Bankruptcy Act (11 U.S.C. § 96(a)) and was voidable by the trustee under § 60(b) of the Act (11 U.S.C. § 96(b)). This court found that all the statutory elements of a voidable preference were present and entered an order in favor of the trustee.

The defendant appealed the order to the United States District Court for the District of South Carolina. On appeal the defendant contended that the transfer was not a preference because it did not diminish the estate payable to other unsecured creditors of the bankrupt. The defendant relied primarily upon the opinion in *In the Matter of National Home Products, Inc.*, 4 B.C.D. 1295, 1296 (E.D.La.1978) in which the court asserted that although a transfer satisfies all the statutory elements of a preference under § 60(a) of the Act,

> a judicially created addition to the black-letter requirements mandates that a transfer will not be deemed preferential . . . unless the transfer would "diminish" or "deplete" the estate of the . . . bankrupt available for creditors of the same class.

The district court concluded that this issue "was never presented to the bankruptcy court." Therefore, the district court remanded the matter to this court for specific findings relevant to the issue raised by the defendant.[1]

### ISSUES PRESENTED

Certain facts in this matter are not in dispute. During 1978 the defendant performed accounting services for Sharpe Construction Company, Inc. (hereinafter "Sharpe"). On December 27, 1978 the defendant submitted a bill in the amount of $5,110 for these accounting services. The items included in the bill are as follows:

1. $1,800 for preparation of state and federal tax returns, originally billed April 30, 1978;
2. $2,250 for preparation of financial statements, originally billed July 31, 1978;
3. $175 for a follow up with the Internal Revenue Service, originally billed July 31, 1978;
4. $275 for termination of a pension plan, originally billed July 31, 1978;
5. $450 for conversion of financial statements, originally billed December 27, 1978; and
6. $160 for meeting with a prospective purchaser, originally billed December 27, 1978.

On January 24, 1979 Sharpe paid the defendant $5,010 towards satisfaction of the debt represented by the $5,110 December 27 bill. On March 27, 1979 Sharpe Construction Company, Inc. petitioned for relief under the Bankruptcy Act. In connection with this petition the defendant prepared the bankrupt's schedules and statement of affairs. Before the defendant commenced preparation of the schedules and statement of affairs, Sharpe paid the defendant $900 as compensation for these accounting services. The trustee does not challenge the validity of this $900 payment.

The district court has requested additional findings on the following questions:

"(1) Whether or not the accounting services rendered by the defendant were essential to the continued operation of Sharpe Construction Company, Inc., (2) and whether the payment for these services actually diminished or depleted the estate of the bankrupt, (3) and whether these services would have been required and the cost therefor incurred after the bankruptcy."

These questions draw their relevance from the arguments that the defendant advanced to support his contention that the January 24, 1979 payment did not diminish the bankrupt's estate.

In essence, the defendant presents two distinct arguments. First, the defendant directs this court's attention to decisions in which courts have asserted that payments essential to the continued operation of a bankrupt do not diminish the bankrupt's estate. *See, e. g., Richmond Standard Steel Spike & Iron Co. v. Allen*, 148 F. 657, 661–62 (4th Cir. 1906); *In the Matter of National Home Products, Inc.*, 4 B.C.D. 1295 (E.D. La.1978). The defendant contends that if this court finds that the accounting services were essential to the bankrupt's continued operation, the rationale articulated in these cases compels the conclusion that the pay-

1. Order of Hon. Robert F. Chapman, United States District Judge, dated July 10, 1980.

ment for these services did not diminish the estate.[2]

The defendant's second argument is premised upon the assertion that the accounting services for which he was compensated by the January 24 payment were necessary for the administration of the estate in bankruptcy. The defendant argues that had he not performed these services, prior to the date of bankruptcy, the trustee would have had to hire an accountant to perform these services during the administration of the estate. The defendant argues that his services reduced the expenses of the administration of the estate by an amount greater than the January 24 payment, contending that the cost of performing these services during the bankruptcy administration "would have been tremendously more expensive than was ... (the defendant's) bill." Since administrative expenses are entitled to priority under § 64 of the Act, the defendant apparently contends that payment did not have the effect of diminishing the bankrupt's estate payable to general unsecured creditors.

## DISCUSSION

The plaintiff has abandoned his claim to $1,800 of the funds paid by the bankrupt to the defendant for preparation of tax returns. Hence, $3,310 remains in controversy. This court will resolve this controversy by making the findings requested by the district court in conjunction with an analysis of the defendant's arguments. The court will consider the defendant's arguments that the payment did not diminish the bankrupt estate in the order in which they have been introduced.

■ This court does not dispute that the accounting services performed by the defendant were beneficial to the Sharpe Construction Company, Inc. (hereinafter "Sharpe"). Furthermore, this court finds that the preparation of the financial statements enabled Sharpe to obtain a surety

and that obtaining such a surety enabled Sharpe to continue in operation. Hence, this court finds that the preparation of the financial statements was essential to the continued operation of Sharpe. This court also finds that of the other accounting services, the payment for which is now in issue, none was essential to the continued operation of Sharpe.

The finding that preparation of the financial statements was essential to the continued operation of Sharpe does not, however, support the conclusion that the payment of $2,250 for these services did not diminish the bankrupt estate. The crucial issue in National Home Products, supra, and Richmond Standard Steel Spike, supra, was not whether the services benefitted the bankrupt. Rather, the courts focused upon whether the *payment* for the services enabled the bankrupt to continue in business and hence preserved rather than depleted the estate. In National Home Products the payment in issue enabled the bankrupt to continue to receive utility services without which the bankrupt could not have continued in business. In Richmond Standard Steel Spike, the payment in issue was the current salary due to the president of the bankrupt corporation. In ruling that the payment to the president did not deplete the estate and hence was not a preference, the court stated that the "payment was necessary in order that his services might be retained to manage and continue the company's business." 148 F. at 652.

■ The rationale expressed in National Home Products and Richmond Standard Steel Spike is that the payment of an antecedent debt does not diminish the estate if the payment enables the bankrupt to acquire future services on credit from the transferee which benefit the estate. The facts in this case do not fall within the scope of this rationale. The January 24, 1979 payment did not enable Sharpe to obtain future services on credit from the de-

2. At page 2 of his Memorandum filed with this court on September 2, 1980, defendant asserts that the question of whether payment diminished or depleted the estate "is really part and

parcel" of the question of whether the accounting services were essential to the continued operation of Sharpe Construction Company, Inc.

532

fendant that allowed Sharpe to continue in business. After the January 24, 1979 payment, the only services performed for Sharpe by the defendant were in connection with Sharpe's bankruptcy liquidation. Such services certainly did not enable Sharpe to continue in business and thereby preserve the estate. More significantly, the defendant did not provide accounting services on credit after the January 24, 1979 payment. The defendant was paid a fair fee in full before performing any services for Sharpe after January 24, 1979. Therefore, although this court finds certain accounting services rendered by the defendant were essential to the continued operation of Sharpe, this court must conclude that the January 24, 1979 payment for these services actually diminished and depleted the estate of the bankrupt. Hence, this court holds that the rationale expressed in *National Home Products* and *Richmond Standard Steel Spike* does not protect the January 24, 1979 payment from attack as a preference.

With reference to the defendant's second argument, this court finds that with the possible exception of the preparation of the tax returns (the payment for which is not in issue) none of the accounting services performed by the defendant in 1978 would have been required and the cost therefor incurred in the administration of the bankrupt estate. Some of the services, such as meeting with a prospective purchaser, conversion of financial statement, termination of the pension plan, and the follow up with the IRS bore no relation to the administration of the bankrupt estate. The preparation of financial statements was performed so long before the bankruptcy case was commenced that these services did not have a meaningful impact on the costs of administering the estate. Since this court finds that the services performed in 1978 did not reduce the costs of administering the bankrupt's estate this court holds that the January 24, 1979 payment decreased the estate available to the general unsecured creditors.

Furthermore, even if some of the defendant's services did reduce the costs of administering the bankrupt's estate, this court is persuaded that the payment for these services nevertheless constitutes a preference. Assuming that the accounting services performed in 1978 were essential to the administration of the bankrupt's estate and that the defendant had not been paid for these services, this court would certainly refuse to accord priority under § 64(a)(1) (11 U.S.C. § 104(a)(1)) to a claim by the defendant for the value of these services. *Wheeling Electric Co. v. Mead,* 177 F.2d 718 (4th Cir. 1949); *In re Garcia Sugars Corp.,* 49 F.Supp. 350 (S.D.N.Y.1943). Since unpaid debts for prepetition services that benefit the estate by reducing its costs of administration are not entitled to priority in the distribution of the estate, it is difficult for this court to perceive how payment of such debts prior to bankruptcy would not deplete the estate available to the general unsecured creditors.

## CONCLUSION

The January 24, 1979 payment of the amount now in dispute, $3,310, diminished the estate available for distribution to the unsecured creditors of the bankrupt. The payment, therefore, constitutes a preference under § 60(a) (11 U.S.C. § 96(a)) recoverable by the trustee under § 60(b) (11 U.S.C. § 96(b)).

## ORDER

Therefore, it is ORDERED, ADJUDGED AND DECREED that the plaintiff have judgment against the defendant, Wilson M. MacEwen, for the sum of Three Thousand Three Hundred Ten ($3,310) Dollars, together with the costs of this action.