**In re McK, LTD., a Colorado limited partnership, Debtor.**

**Bankruptcy No. 81 B 00427 Mc.**

United States Bankruptcy Court,
D. Colorado.

Oct. 9, 1981.

Maria J. Flora, Denver, Colo., for creditor.

Andrew C. Snyder, Denver, Colo., for debtor.

## ORDER DENYING REQUEST FOR ADMINISTRATIVE EXPENSES

JOHN F. McGRATH, Bankruptcy Judge.

The Creditor, Metro National Bank (Metro), sought leave of the Court to obtain hazard insurance on the real property, improvements, office contents, and equipment which are assets of the above-captioned Chapter 11 estate. The payment for which the Creditor sought leave amounted to a total of $5,066.00: $2,138.00 for past due premiums and $2,928.00 for coverage from August 25, 1981, to August 25, 1982.

The attorney for Metro argued that if a casualty loss to the estate should occur, not only Metro, but all creditors of the estate would be injured because there would be no assets from which to satisfy any of the claims. The said attorney also argued that the payment of the past due premiums is an actual and necessary cost of preserving the estate under 11 U.S.C. § 503(b)(1)(A) because the present insurer has refused to write another policy unless the arrearage on the present policy is cleared.

The attorney for the Debtor, on the other hand, argued that insurance was not a cost of preservation of the estate and therefore should not be granted as a cost of administration. He also argued that Metro was acting in its own interests, rather than in the interests of the estate, by seeking to preserve 100% payment for itself when no other creditor could be given this same guarantee.

The question presented for the resolution of the Court is whether or not the cost of insuring the major asset of the Debtor's estate is a cost of administration or merely a part of the creditor's secured claim. This question is further broken down into the following sub-issues: (1) Is the pre-petition cost of insurance a cost of administration? (2) Is the post-petition cost of insurance a cost of administration?

The statutes to be construed are 11 U.S.C. § 503(b)(1)(A) and § 64(a)(1) of the Bankruptcy Act. Section 503, in general, deals with the allowance of administrative expenses and section 503(b)(1)(A), in particular, allows expenses including the "... actual, necessary costs and expenses of preserving the estate, including wages, salaries, or commissions for services rendered after the commencement of the case...." Section 64(a) of the Act is the section from which 503(b)(1)(A) was mainly derived.

As regards the pre-petition insurance, the statutory language is clear. Section 503(b)(1)(A) allows costs and expenses for preserving the estate "rendered *after the commencement of the case*." (Emphasis added.) Thus, the Code has explicitly dealt with the question of expenses and costs which arise prior to the filing of the petition and has forbidden these costs. 3A Collier on Bankruptcy (14th Ed.) 1558, ¶ 62.24, in interpreting section 64(a)(1) states that "(c)osts and expenses of preservation to be accorded priority must accrue subsequent to the filing of the petition...."

As regards post-petition insurance, although insurance costs are not explicitly mentioned in section 503(b)(1)(A), what constitutes costs of administration is largely

discretionary with the Court, in light of the attendant facts in each case. *Lerner Stores Corporation v. Electric Maid Bake Shops*, 24 F.2d 780 (5th Cir. 1928). Insurance costs have specifically been allowed as administrative costs. See *In the Matter of Pioneer Sample Book Co., Inc.*, 374 F.2d 953, 961 (3rd Cir. 1967). Further, section 503(b)(1)(A) uses the word "including" and 11 U.S.C. § 102(3) provides that the word "including" is not a limiting word. 3 Collier on Bankruptcy (15th Ed.) 503–16 ¶ 503.-04 states:

> The hiring by the trustee of custodians or watchmen, insuring the value of the property, and the like were accepted and recognized as actual and necessary costs and expenses of preserving the estate. To the extent that such costs and expenses are unpaid by the (debtor-in-possession), the holder of such claims is entitled to the administrative status contemplated by § 503(b)(1)(A).

The attorney for Metro argued in Court that Metro had contacted the Debtor regarding the need for insurance and was told by the Debtor that it had no money with which to provide insurance. Thus, if all other requirements are met, Metro was a proper party to obtain insurance because of its interest in the property and should be reimbursed for the amounts expended in insuring the property.

There are two further requirements which the Court feels must be met before the Court can allow insurance for the property of the Debtor to be considered as an administrative expense. First, according to the words of the statute, the expenses must be "actual" and "necessary" for the preservation of the estate. There can be no serious argument that hazard insurance on real property is necessary for preservation of the real property. It is obvious that if a building were to be destroyed the value of the property would decrease dramatically. Second, according to 3A Collier on Bankruptcy (14th Ed.) 1413, ¶ 62.24, claims can be rejected if the claimant acts on his own interest or the services were of no benefit to the estate. This is where the Court has

trouble in granting the request for payment of an administrative expense. While there may ultimately be some benefit to the estate, it seems clear that Metro is acting primarily in its own interest.

The approximate value of the subject real property is $1,500,000.00. The amount of the claim by Metro is $1,028,000.00. The amount owed to unsecured creditors without priority is $202,000.00 and the amount owed to creditors with priority is $27,489.00, for a total of $229,489.00. The total amount owed to creditors other than Metro is only 22% of the amount owed to Metro. In the opinion of the Court, this small percentage shows that Metro is motivated primarily by self-interest. It has been argued by Metro, and held by this Court, that there is a continuing diminution of the estate. Should this diminution become severe, the above ratio would become more imbalanced in favor of Metro, the creditor secured by the real property in question.

WHEREFORE, IT IS ORDERED that the request by Metro National Bank for administrative expenses is denied, and it is

FURTHER ORDERED that the claim of Metro National Bank for costs of insuring the real property is a part of their secured claim against the Debtor.