In the Matter of HEARTH & HINGE, INC., Debtor.

Bankruptcy No. 1–81–03466.

United States Bankruptcy Court, S.D. Ohio W.D.

April 1, 1983.

Jeffrey P. Harris, Cincinnati, Ohio, for plaintiff.

William H. Anderson, Eric C. Okerson, Cincinnati, Ohio, for defendant.

## ORDER

RANDALL J. NEWSOME, Bankruptcy Judge.

This matter is before the Court pursuant to the Chapter 7 trustee's objection to the allowance of a claim for administrative priority expenses filed by the Center Companies (hereinafter referred to as "Center"), former landlord of the debtors. The following facts were presented to the Court pursuant to a hearing held on March 28, 1983:

Prior to June of 1981 debtor was a lessee of store property located at the Kenwood Shopping Center.[1] The debtor had failed to make some of its lease payments, and sometime after June 1, 1981 vacated the premises. Much of its business merchandise was left behind on the leased premises. In the meantime two of Center's other shopping center tenants expressed an interest in expanding into debtor's premises.

In order to take advantage of this business opportunity, on June 29, 1981 Center decided to move debtor's inventory into storage. In order to gain access to the debtor's premises, Center obtained the services of a locksmith at a cost of $35.09. A Certified Public Accountant was hired to inventory and appraise the merchandise on the premises at a cost of $525.00. The merchandise was packed and stored into a 594 square foot space by shopping center

---

1. The shopping center is owned by Equitable Life Assurance Company, and the Center Companies manages the center as agent for Equitable.

maintenance employees.[2] On December 29, 1981, some 5½ months later, debtor filed its chapter 7 petition.

Debtor's merchandise remained in storage from June 29, 1981 until April of 1982, when it was transported by the court-appointed auctioneer to his premises. A court-appointed appraiser reappraised the property, and the property was sold on April 25, 1982.

In addition to the other costs noted above, Center claims that it is entitled to an administrative expense priority for storage rent of $154.86 per month from June 29, 1981 through April 24, 1982.

Center cites 11 U.S.C. § 503(b)(1)(A) as support for the award of pre-petition and post-petition expenses and rent. That provision reads in pertinent part as follows:

> After notice and hearing, there shall be allowed administrative expenses, . . . including—
>
> > (1)(A) the actual, necessary costs and expenses of preserving the estate, including wages, salaries, or commissions rendered after the commencement of the case:

■ There is no question that Center is entitled to an administrative expense for post-petition rent under the above-quoted section, both as a matter of fact and law. Center's storage of the debtor's goods effectively protected and preserved the major portion of the estate's assets. Contrary to the trustee's assertions, a charge of .27 cents per square foot per month for the space which debtor's property occupied is certainly reasonable. Accordingly, Center's application for administrative priority as to post-petition rent is hereby GRANTED. See, e.g. *In re Jarvis Kitchenware of D.C., Inc.,* 13 B.R. 230 (Bkrtcy.D.C.1981); *In re Ruby's Florida, Inc.,* 11 B.R. 171, 175 (Bkrtcy.M.D.Fla.1981).

■ The only question which remains concerns Center's entitlement to an administrative expense for pre-petition rent and expenses. Interpreting § 503(b)(1)(A), Center asserts that "after the commencement of the case" imposes a limitation only as to "wages, salaries, or commissions", not as to "actual, necessary costs and expenses of preserving the estate." Center's interpretation is consistent with the settled principle of statutory construction known as "the doctrine of the last antecedent," which was succinctly set forth in *Quindlen v. Prudential Insurance Company of America,* 482 F.2d 876, 878 (5th Cir.1973):

> . . .[R]elative and qualifying words, phrases, and clauses are to be applied to the words or phrases immediately preceding, and are not to be construed as extending to or including others more remote.

See also, 2A *Sutherland Statutory Construction* § 47.33 (4th Ed.1973).

Center's interpretation of the statute is also consistent with the wide degree of discretion which the statute grants in awarding administrative priority expenses. As is noted in 3 *Collier on Bankruptcy* ¶ 503.04, p. 503–12 (15th Ed.1982):

> A court might well conclude that there are to be allowed as administrative expenses claims not necessarily precisely covered by the provisions of section 503(b) itself but which could fall into any of the phrases described in the subsection of section 503(b). Thus, what constitute actual and necessary costs and expenses of preserving an estate might well be open to judicial construction.

While Center's legal arguments are persuasive, they must be weighed against the countervailing concerns of keeping administrative expenses to a minimum and narrow-

---

**2.** Center attempted to establish the value and amount of man hours expended in this move through the testimony of Gerard Matowski, the manager of Kenwood Shopping Center, and Exhibit D attached to Center's application. Matowski had no personal knowledge as to any of the contents of that exhibit. Furthermore, it appears that the employees in question were on Center's regular payroll and moved debtor's property when they were not engaged in other tasks. A second move was subsequently made for Center's convenience. Given the enormous number of hours recorded and the suspect accuracy of Exhibit D, Center's claim for $982.63 in labor charges will be denied in toto.

ly construing the terms of the statute. *See, In Re O.P.M. Leasing Services, Inc.,* 23 B.R. 104, 121 (Bkrtcy.S.D.N.Y.1982). It also must be noted that when Congress intended to allow an administrative priority for pre-petition expenses, it so stated in express terms. This is exemplified by § 503(b)(3)(E), which allows an administrative expense for the actual, necessary expenses of a pre-petition custodian superceded under § 543. See also, 11 U.S.C. § 101(10); 124 Cong.Rec. H 11,094–5 (Sept. 28, 1978); S 17,411 (Oct. 6, 1978). Congress's intent is also gleaned from the fact that § 503(b)(1)(A) of the Code was modeled upon § 64(a)(1) of the Act, which was consistently interpreted as precluding administrative expenses for pre-petition expenditures. *See, e.g. In Re Sharpe Construction Company,* 10 B.R. 528, 532 (Bkrtcy.D.S.C.1981).

Our review of the reported cases indicates that these countervailing considerations have led other courts to conclude uniformly that pre-petition expenses are not entitled to administrative priority under § 503 and § 507. *See, e.g., In Re World Fashions, Inc.,* 24 B.R. 452, 455 (Bkrtcy.N.D. Ga.1982) (administrative claim for merchandise delivered pre-petition denied); *In Re Boogaart of Florida, Inc.,* 23 B.R. 157, 9 B.C.D. 849 (Bkrtcy.S.D.Fla.1982) (administrative claim for pre-petition advertising expense denied); *In Re Meyer's, Inc.,* 15 B.R. 390 (Bkrtcy.S.D.Cal.1981) (pre-petition expenses incurred in moving, protecting and liquidating debtor's property not entitled to administrative priority); *In Re McK, Ltd.,* 14 B.R. 518 (Bkrtcy.D.Colo.1981) (pre-petition cost of insurance not chargeable as cost of administration); *In Re Jarvis Kitchenware of D.C., Inc.,* 13 B.R. 230 (Bkrtcy.D. D.C.1981) (pre-petition rent not allowed as cost of administration).

■ Even if we were to reject the impressive line of authority cited above, we would still be compelled to deny Center's claim for pre-petition administrative expenses. While Center's storage and appraisal of the debtor's property did confer a benefit upon the debtor and its creditors,

the intent of its actions was to increase rental revenues from the expansion of other shopping center stores into space occupied by the debtor, not to preserve and protect the estate for the benefit of debtor's other creditors. As was noted in *In Re Meyer's Inc.,* 15 B.R. 390, 392 (Bkrtcy.S.D.Cal.1981):

> ... [P]re-filing expenses incurred by creditors exclusively in their own self interest, which may subsequently have been of some benefit to the estate have no [administrative] priority.

See also, *In Re McK, Ltd.,* 14 B.R. 518, 519 (Bkrtcy.D.Colo.1981).

For the foregoing reasons, Center's application for payment of pre-petition expenses as costs of administration is hereby DENIED. Center's claim for pre-petition expenses shall be treated as a general unsecured claim, with the exception of the $982.63 claimed as labor charges, which shall be denied in toto. As noted above, their claim for post-petition rent as an administrative priority expense is hereby GRANTED in the amount of $696.87.

IT IS SO ORDERED.