**IN RE JARTRAN, INC., Debtor.**

**FRUEHAUF CORPORATION,**
Appellant.

v.

**JARTRAN, INC., Appellee.**

No. 88–2166.

United States Court of Appeals,
Seventh Circuit.

Argued Jan. 19, 1989.

Decided Sept. 26, 1989.

As Amended Sept. 28, 1989.

Gerald F. Munitz, Cory Lipoff, Winston & Strawn, Chicago, Ill., for appellant.

Christine L. Olson, Sara E. Cook, James P. DeNardo, McKenna, Storer, Rowe, White & Farrug, Chicago, Ill., for appellee.

Jack Penca, Asst. U.S. Atty., Chicago, Ill., for U.S.

Before CUDAHY, COFFEY, and EASTERBROOK, Circuit Judges.

CUDAHY, Circuit Judge.

In this case we are asked to determine the novel question of the propriety of serial Chapter 11 bankruptcy filings. The debtor originally filed a petition for reorganization under Chapter 11, which was confirmed and substantially consummated. Less than one and a half years later, the debtor filed

a second Chapter 11 petition, which had as its goal the liquidation of the reorganized entity. If the second Chapter 11 filing is proper, the original plan for reorganization approved as a result of the first Chapter 11 petition will presumably be superseded by a new plan. One of the creditors under the original plan objects to this potential alteration of its rights and claims. The bankruptcy court, however, ruled that the serial filing was permissible and that the creditor was not automatically entitled to an administrative priority in the second case by virtue of guarantees in the original reorganization plan. *In re Jartran, Inc.,* 71 B.R. 938 (Bankr.N.D.Ill.1987). The district court affirmed, *In re Jartran, Inc.,* 87 B.R. 525 (N.D.Ill.1988), and we do likewise.

## I.

In 1981 Jartran, Inc. ("Jartran"), a company that rented and leased trucks on a nationwide basis, filed a petition in bankruptcy under Chapter 11 (*Jartran I*). Jartran's Fifth Amended Plan of Reorganization was confirmed in its third modified form ("Plan") on September 29, 1984, and was subsequently substantially consummated. On March 4, 1986, the reorganized Jartran filed a second Chapter 11 petition, this time with the aim of liquidating rather than reorganizing the company (*Jartran II*).[1] Fruehauf Corporation ("Fruehauf"), a creditor under the original Chapter 11 Plan, argues that this second Chapter 11 filing was improper and should be dismissed. Alternatively, Fruehauf argues that it is entitled to an administrative priority in the current proceedings. We will address these contentions after consideration of the jurisdictional situation of the case.

## A.

At oral argument, the panel expressed doubt whether the district court's order in this case was a "final order" suitable for mandatory appeal under 28 U.S.C. section 158(d); the parties have submitted supplemental briefs on this issue. Subsequent to oral argument, the district court certified its original order in this case for discretionary review under 28 U.S.C. section 1292(b), and this court granted Fruehauf's Petition for Permission to Appeal from an Interlocutory Order of the District Court. No. 88–2166 (7th Cir. Feb. 2, 1989). We conclude that the order was not final and that the original notice of appeal therefore did not transfer jurisdiction to this court; the district court retained jurisdiction and certified the order for interlocutory appeal after we had held oral argument in this court. We now have jurisdiction on an interlocutory basis.

The district court's order affirmed the bankruptcy court's order, which (1) denied Fruehauf's motion for administrative priority and (2) denied Fruehauf's motion to dismiss.[2] Neither the bankruptcy court order nor the district court order affirming it was a final order.

█ It is true that a "somewhat relaxed sense of finality ... traditionally characterizes bankruptcy appeals." *In re J. Catton Farms, Inc.,* 779 F.2d 1242, 1250 (7th Cir. 1985). Thus, orders that might not be final by ordinary appeals' standards under 28 U.S.C. section 1291 may qualify as final under the provisions for appeal in bankruptcy cases under section 158(d) (or its predecessor, section 1293(b)).[3] As we ex-

---

1. Of some potential import to events in this case was ongoing litigation in the Ninth Circuit, which resulted in a (more than likely unanticipated) $40 million judgment against Jartran. This judgment was affirmed by the Court of Appeals in July of 1986, four months after Jartran filed its second Chapter 11 petition. *U–Haul Int'l, Inc. v. Jartran, Inc.,* 793 F.2d 1034 (9th Cir.1986). For a fuller discussion of the facts, we refer to the bankruptcy court opinion in this case. *In re Jartran, Inc.,* 71 B.R. 938 (Bankr.N.D.Ill.1987). Here we summarize only those facts pertinent to the issues on appeal.

2. The bankruptcy court also dismissed both parties' motions for summary judgment as moot. No issue as to this portion of the bankruptcy court's decision is before us.

3. As this court has previously noted, the finality provision of section 158(d) is virtually identical to that in section 1293(b), and we have viewed past precedent interpreting section 1293(b) as applicable in section 158(d) cases. *In re Fox,* 762 F.2d 54, 55 (7th Cir.1985); *In re Goldblatt Bros.,* 758 F.2d 1248, 1250 n. 1 (7th Cir.1985); *In re Riggsby,* 745 F.2d 1153, 1155 (7th Cir.1984).

plained in *In re Morse Electric Co.,* 805 F.2d 262 (7th Cir.1986):

> A disposition of a creditor's claim in a bankruptcy is "final" for purposes of § 158(d) when the claim has been accepted and valued, even though the court has not yet established how much of the claim can be paid given other, unresolved claims.... When one creditor's position is finally determined (subject only to proration at the end of the case to reflect the amount of assets and other allowed claims), the disposition is final.

*Id.* at 264 (citations omitted). Although both bankruptcy court and district court orders must be final if jurisdiction under section 158(d) is to lie, *In re Riggsby,* 745 F.2d 1153, 1155–56 (7th Cir.1984), even a district court order remanding the case to the bankruptcy court may qualify as final if "all that remains to do on remand is a purely mechanical, computational, or in short 'ministerial' task, whose performance is unlikely either to generate a new appeal or to affect the issue that the disappointed party wants to raise on appeal from the order of remand." *In re Fox,* 762 F.2d 54, 55 (7th Cir.1985).

■ After oral argument, the parties submitted a stipulation as to the amount of the administrative claim at issue in this appeal. Fruehauf argues that, given this stipulation, the only remaining issue *with respect to this claim* would be "the determination of Fruehauf's *pro rata* share of recovery," a purely "ministerial" task. Supp. Brief of Appellant at 10. Even granting that this is the case (note that an order *denying* an administrative claim does not necessarily affirmatively establish a creditor's position in the way that an order *allowing* a claim or priority would), the balance due under the assumed lease is not the only issue remaining to be resolved between Fruehauf and Jartran. The stipulation itself demonstrates that more than this particular administrative claim remains for resolution:

> Nothing herein shall be construed as affecting any other claim of Fruehauf or the right of any other creditor of Jartran, pursuant to 11 USC 502(a), to object to Fruehauf's claim. The parties agree that all other claims by Fruehauf relate to matters other than the balance due under assumed leases. The parties further agree that nothing herein shall affect any right of Jartran to proceed with its preference claim against Fruehauf ... or the right of Fruehauf to assert any resulting claim for disgorged preferential funds and the right of Jartran to assert claims under 11 USC 506(c).

Stipulation between Fruehauf, Inc. and Jartran, Inc., Debtor and Debtor in Possession re Fruehauf Claim No. F–121 at 2, ¶ 6. Thus a considerable number of potential disputes between Jartran and Fruehauf remain unresolved at this point in the case. Resolution of these claims will be more than a mere "ministerial" matter, as one might expect given the stage at which this second Chapter 11 proceeding rests; we are not reviewing objections to a fully developed reorganization or liquidation plan.[4]

Fruehauf points us to *In re Saco Local Development Co.,* in which the court concluded that "as long as an order allowing a claim or priority effectively settles the amount due the creditor, the order is 'final'." 711 F.2d 441, 448 (1st Cir.1983). The order in the case before us does not effectively settle the amount due Fruehauf in the second Chapter 11 proceeding. This is true not only because the denial by the courts below of an administrative priority fails to affirmatively establish Fruehauf's position in the second proceeding but also because even a final conclusion as to this particular claim would not "effectively settle" the total amount due Fruehauf. This is also why *In re J. Catton Farms* is inapposite; there the bankruptcy court had adduced a "bottom-line" total amount owed the creditor by the debtor, and all that remained was determination of the credi-

**4.** Contrast the situation in this case, for example, with that in *In re Sandy Ridge Oil Co.,* where the bankruptcy court issued an order specifically stating that all other remaining issues "had been resolved by previous order or judgment" and that any unresolved issues or claims that might remain through inadvertence were "dismissed for lack of prosecution." 807 F.2d 1332, 1334 n. 2 (7th Cir.1986).

tor's relative priority. 779 F.2d at 1244–45. Similarly, the decisions of the bankruptcy and district courts in *Morse Electric* fixed the precise total amount due a particular creditor on its secured and unsecured claims. 804 F.2d at 263. It seems clear that a denial of a request for administrative priority as to a portion of a creditor's claim, particularly where the affirmative contents of a Chapter 11 plan in this case have not been firmly established or confirmed, lacks similar finality. This is not to say that denials of requests for administrative priority can never be final orders, for where courts review cases in which fully developed plans for reorganization or liquidation have been established, if all other issues have been settled, a denial of priority might finally conclude all issues as to the creditor's position. However, that is not this case.

Fruehauf admits that it has pending in this bankruptcy "other disputes with Jartran unrelated to" the administrative priority claim at issue here, but would have us treat individual "claims" within a bankruptcy case as distinct for purposes of the finality doctrine. As authority, Fruehauf cites a footnote in *In re Xonics*, 813 F.2d 127 (7th Cir.1987), which notes that although the two parties were "not involved in any additional disputes in the bankruptcy case," they were parties to a distinct equitable subordination case. *Id.* at 130 n. 1. The parties here have expressly noted that they are involved in additional disputes in this bankruptcy case, so *In re Xonics* does not help them. *In re Allen*, 816 F.2d 325 (7th Cir.1987), held that a portion of the bankruptcy court's order voiding a foreclosure sale was a final order even though another portion of the order, dealing with deacceleration of the debtors'ρ defaulted mortgage, was not. It is true that in that case other issues remained to be resolved between the creditor and debtor, but the separable final order in *In re Allen* dealt with the final disposition of the debtors' property. We have noted the special urgency of such orders, particularly where

time is of the essence in the proceedings. *In re Allen*, 816 F.2d at 327 (if the mortgage sale was valid, it "commenced the running of a six month period within which a defendant might redeem, and gave Mattoon a right to a deed if redemption was not made within that period."); *In re Sax*, 796 F.2d 994, 996–97 (7th Cir.1986) ("Orders approving or failing to approve the sale of a debtor's property are considered final decisions and are immediately appealable.... If purchasers at a trustee's sale of a debtor's property had to wait until after the entire bankruptcy proceedings were finished to have their property rights determined, undoubtedly a debtor's property would be worth less than it is under current law."); *In re Kaiser*, 791 F.2d 73, 74 (7th Cir.1986) (order disposing finally of controversy "over who has the right to the property in question" is appealable order). We do not deal here with such an order.[5] In some rare cases creditors may appeal despite other pending disputes, but this is an exception to the general rule of "one appeal per creditor" articulated by the finality doctrine. To routinely permit separate appeals as to each distinct claim or issue raised by a creditor would obviously undermine the finality rule entirely. Thus, neither the bankruptcy court's denial of Fruehauf's motion for administrative priority nor the district court's affirmance of that denial is a final order.

The bankruptcy court's denial of Fruehauf's motion to dismiss is even more clearly not appealable as a final order. Jartran appears to recognize this, apparently conceding the interlocutory character of this portion of the appeal—but arguing that if jurisdiction exists as to the administrative claim issue, disposition of that issue would "subsume" the issue involved in the motion to dismiss. Supp. Brief of Appellee at 12. Because we have concluded that the portion of the order disposing of the administrative claim is not a final order, we need not reach the issue whether a kind of "pendent" jurisdiction lies as to the motion to

---

5. We therefore do not confront any issue as to the amount of property that must be involved before an order can be final, but we note that

the cases we have cited deal with sales of all or substantially all of the property at issue.

dismiss. This court has already held that denials of motions to dismiss are generally not final orders, even in the bankruptcy context. *In re Cash Currency*, 762 F.2d 542, 546 (7th Cir.1985) ("The orders permitting limited intervention by the Director, denying his motion to dismiss the Chapter 11 petitions, and appointing a bankruptcy trustee were interlocutory and reviewable only if the district court agreed to entertain the appeals."); *accord In re 405 N. Bedford Dr. Corp.*, 778 F.2d 1374, 1378 (9th Cir.1985) (denial of motion to dismiss for bad faith Chapter 11 filing is not final). *But see In re Christian*, 804 F.2d 46 (3d Cir. 1986) (denial of motion to dismiss Chapter 7 filing is final, appealable order).

The parties also urge, in the alternative, that this court has jurisdiction under the marginal finality doctrine articulated by the Supreme Court in *Gillespie v. United States Steel Corp.*, 379 U.S. 148, 152–54, 85 S.Ct. 308, 310–12, 13 L.Ed.2d 199 (1964) (where cases come within "twilight zone" of finality, courts should give "practical" not "technical construction" to finality requirement, weighing costs and inconvenience of piecemeal review against potential injustice wrought by delay and salutory

effect of early disposition of questions "fundamental to the further conduct of the case"). *Gillespie's* admonition, made apropos of the finality requirement articulated by 28 U.S.C. section 1291, takes on additional significance in bankruptcy cases, given the already "relaxed" character of finality in the bankruptcy context. However, this is not a case that falls within the "twilight zone" of finality; it rests, for reasons we have explained, clearly outside and beyond the appropriate boundary.[6]

■ Nonetheless, this court has, as noted above, accepted discretionary jurisdiction of this appeal as an interlocutory order. The propriety of serial Chapter 11 filings of the sort involved here, and their consequences for creditors' administrative priorities, is a question of first impression in this court; it is a novel issue that has not yet been dealt with by appellate courts or by the commentators. If we ruled that the second Chapter 11 filing was impermissible, we would effectively end the proceeding. As we noted in *In re Riggsby*, a case "where the district court rejects an argument that if accepted would terminate the proceeding, is a 'natural' for appeal under 28 U.S.C. § 1292(b)." 745 F.2d at 1156.

**6.** We distinguish a number of bases for departure from the finality rule. (1) The *Gillespie* doctrine gives us the general instruction that where finality is uncertain, jurisdiction should be exercised with an eye to the balance of practical considerations delimited by the Court. (2) A more specific application of this general principle is found in the "collateral order" doctrine, which permits appeals of decisions that "finally determine claims of right separable from, and collateral to, rights asserted in the action, too important to be denied review and too independent of the cause itself to require that appellate consideration be deferred until the whole case is adjudicated." *Cohen v. Beneficial Loan Corp.*, 337 U.S. 541, 546, 69 S.Ct. 1221, 1225–26, 93 L.Ed. 1528 (1949); *see also Coopers & Lybrand v. Livesay*, 437 U.S. 463, 98 S.Ct. 2454, 57 L.Ed.2d 351 (1978) (confirming existence of "collateral order" exception, refusing to allow new "death knell" exception to finality requirement). (3) Finally, the *Forgay–Conrad* exception allows review of orders directing "immediate delivery of physical property," thereby subjecting the losing party to "irreparable harm." *Forgay v. Conrad*, 47 U.S. (6 How.) 201, 12 L.Ed. 404 (1847); *see In re Martin Bros. Toolmakers, Inc.*, 796 F.2d 1435, 1437 (11th Cir.1986) ("[t]his

circuit and others" have "freely applied" the *Forgay–Conrad* rule). The rule articulated by this court in *Allen, Sax* and *Kaiser* (see discussion *supra*) evinces a similar approach to orders disposing of property.

The parties in the case before us have relied only upon the more general *Gillespie* exception. This makes sense because the order in this case is clearly not a collateral order. *See In re Lytton's*, 832 F.2d 395, 402 (7th Cir.1988) (collateral order must resolve issue "completely separate" from merits and be "effectively unreviewable on appeal" from final judgment); *In re Goldblatt Bros., Inc.*, 758 F.2d at 1250–51 (district court order [reversing bankruptcy court's (a) denial of one party's administrative claim and (b) grant of summary judgment to party seeking dismissal of adversary proceeding] is not collateral order; parties neither raise issues "separate from the merits" nor demonstrate "irreparable harm from having to wait"); *In re Riggsby*, 745 F.2d at 1157 (district court order reversing dismissal of a complaint is not "collateral" or "separate from the merits"); *see also Richardson–Merrell Inc. v. Koller*, 472 U.S. 424, 105 S.Ct. 2757, 86 L.Ed.2d 340 (1985); *Firestone Tire & Rubber Co. v. Risjord*, 449 U.S. 368, 101 S.Ct. 669, 66 L.Ed.2d 571 (1981); *In re Looney*, 823 F.2d 788 (4th Cir.1987).

The parties here have formally appealed under section 1292(b),[7] and we have granted their petition for permission to appeal. We have previously determined that discretionary appeals under section 1292(b) are appropriate in bankruptcy cases. *In re Moens,* 800 F.2d 173, 177 (7th Cir.1986); *see also In re American Reserve Corp.,* 840 F.2d 487 (7th Cir.1988).

 One last jurisdictional hurdle remains, however. If the order of the bankruptcy court was not final, then the district court could only have had jurisdiction on an interlocutory basis. This would ordinarily be unproblematic under 28 U.S.C. section 158, which provides:

> (a) The district courts of the United States shall have jurisdiction to hear appeals from final judgments, orders, and decrees, and, with leave of the court, from interlocutory orders and decrees, of bankruptcy judges entered in cases and proceedings referred to the bankruptcy judges under section 157 of this title.
>
> . . . . .
>
> (c) An appeal under subsections (a) and (b) of this section shall be taken in the same manner as appeals in civil proceedings generally are taken to the courts of appeals from the district courts and in the time provided by Rule 8002 of the Bankruptcy Rules.

However, Fruehauf's appeal here took the form of a bare "Notice of Appeal" stating simply that Fruehauf "appeals to the United States District Court for the Northern District of Illinois, Eastern Division" from the bankruptcy court's order. We are thus faced with two questions: (1) Did Fruehauf adequately meet the requirement of subsection (a) that it obtain leave of the district court for its interlocutory appeal from the bankruptcy court, and (2) does subsection (c), which requires that appeals be taken to the district court from the bankruptcy court "in the same manner" as appeals from the district court to this court, mandate that the bankruptcy court certify this interlocutory appeal to the district

court (in the same manner as the district court would have to in an interlocutory appeal to this court)?

Although the district court did not formally grant leave in the interlocutory appeal, it effectively exercised jurisdiction in the case. That it viewed the issues involved as sufficiently important to justify interlocutory appeal is evident not only in the serious attention it gave them in the memorandum opinion it issued, but also in its subsequent order certifying the case to this court. It would have been preferable to have had the jurisdictional situation sorted out earlier in the case, so that the district court could have granted formal leave in the interlocutory appeal. However, we conclude that the district court in this case effectively gave leave for an interlocutory appeal from the bankruptcy court. *See Chicago Assoc. of Commerce and Indus. v. E.P.A.,* 873 F.2d 1025, 1031 n. 11 (7th Cir.1989) ("'unless we are to become a citadel of technicality,' ... proliferating unnecessary and duplicative paperwork, we will not rest jurisdiction on variations of this kind") (quoting *Soo Line R.R. Co. v. Escanaba & Lake Superior R.R. Co.,* 840 F.2d 546, 549 (7th Cir.1988)).

The second question is one upon which a number of courts have disagreed. On the one hand, a number of district courts have read subsection (c) as requiring certification of interlocutory appeals by the bankruptcy court. *In re Connelly,* 57 B.R. 794, 796 (N.D.Ill.1986) ("both the bankruptcy judge and the district court must certify" interlocutory appeal); *In re United Press Int'l, Inc.,* 60 B.R. 265, 276 (Bankr.D.D.C. 1986) ("certification by the bankruptcy judge, as well as leave of the district judge, is now required for appeals to a district judge from an interlocutory order or decree of a bankruptcy judge"); *In re Trak Microcomputer Corp.,* 58 B.R. 708, 713 n. 1 (Bankr.N.D.Ill.1986) ("certification by the bankruptcy judge is necessary for interlocutory appeals as the District Court must certify interlocutory appeals from it under

---

7. This distinguishes their situation from that of parties who either failed to request certification from the district court, *see In re Riggsby,* 745

F.2d at 1156, or failed to ask the appellate court to accept interlocutory jurisdiction. *See In re Cash Currency,* 762 F.2d at 547.

§ 1292(b)"). On the other hand, the Third Circuit, along with a number of other district courts, has reached a contrary conclusion. *In re Bertoli*, 812 F.2d 136, 140 (3d Cir.1987) ("no certification is required"); *In re First Am. Bank of N.Y.*, 64 B.R. 958, 962 (D.Del.1986) ("if FAB satisfies the three-prong test of section 1292, the appeal should be heard despite the absence of a certification from the Bankruptcy Court"); *In re Huff*, 61 B.R. 678, 682 n. 6 (N.D.Ill. 1986) ("Since § 1292(b) applies here only by analogy, there is no requirement that the bankruptcy judge 'certify' the issue for appeal.").[8] These courts have looked to the language of subsection (a), which plainly states that interlocutory appeals are to be taken "with leave of the court"—obviously, the district court. In light of this specific direction regarding the manner in which interlocutory appeals are to be taken, the Third Circuit declined to read in a certification requirement on the basis of the general language of subsection (c). This interpretation is bolstered by the fact that existing Bankruptcy Rules 8001 and 8003 at the time the Code was adopted did not require certification in interlocutory appeals and by the fact that the Judicial Conference has subsequently altered these rules to conform with the Code in a number of respects, but has not inserted a certification requirement. United States Judicial Conference, *Report of Proceedings of Judicial Conference of United States* 67 (Sept. 18–19, 1986). As the Third Circuit noted, requiring certification would be at odds with the goals of the 1984 amendments to the Bankruptcy Code:

> We doubt that Congress wished to grant district courts greater authority over bankruptcy judges generally, including the authority to withdraw cases solely on their own judgment, while restricting district courts' authority over interlocutory appeals. As Congress intended the district court to have authority to withdraw a case "for cause," so we believe Congress intended the district court to be able to review interlocutory orders for such cause as found by the district court here.

*In re Bertoli*, 812 F.2d at 139. We have previously emphasized that review of interlocutory appeals from the bankruptcy court is in the district court's discretion. *In re American Reserve Corp.*, 840 F.2d 487, 494 (7th Cir.1988), and we decline to read anything into subsection (a) other than what it clearly says—that interlocutory appeals may proceed with leave of the district court. We take subsection (c) as providing a supplemental source of guidance in cases in which the fairly general language of section 158 proves inadequate. Because subsection (a) specifically provides for interlocutory appeal "with leave of the court," we do not need additional guidance on this point, nor does anything indicate that subsection (c) should be read to override or contradict other subsections. We follow the Third Circuit in holding that certification by the bankruptcy court is not required.

We therefore conclude that the district court had jurisdiction of this interlocutory appeal, as does this court.

### B.

■ We turn from the always stimulating and hopefully fruitful consideration of technical jurisdictional points to review at long last the merits of this case. The central issue is whether a debtor whose original plan of reorganization has failed may file a new liquidating Chapter 11 rather than converting to Chapter 7 for liquidation. Fruehauf points to a number of provisions of the Code indicating that this method of liquidation was not contemplated either by the drafters of the Code or by the authors of its subsequent amendments. Fruehauf may well be correct. When the Code, its legislative history or the commentators to date discuss what should happen in the event a Chapter 11 reorganization fails, the universe of available options seems to comprise either conversion to Chapter 7 or liquidation *within* the existing Chapter 11 case. Nonetheless, it is equally clear that the provisions of the Code permit the arrangement at issue here; serial

---

**8.** We note that the Northern District of Illinois is divided on this question.

Chapter 11 filings are permissible under the Code if filed in good faith, as are liquidating Chapter 11 plans. That the drafters may not have fully realized the results of these provisions in combination does not mean that they cannot be so used. *See In re Sinclair*, 870 F.2d 1340 (7th Cir.1989).

First, Fruehauf asserts that the serial filing in this case was improper and should be dismissed or converted to a Chapter 7 under section 1112 of the Code. Fruehauf is relying heavily upon two cases in which serial filings were not permitted. In *In re AT of Maine, Inc.*, the court noted that under the Code, modifications of confirmed plans are not permissible after the plans have been substantially consummated. 56 B.R. 55, 56–57 (Bankr.D.Me.1986) (citing 11 U.S.C. §§ 1127(b), 1101(2)). The debtor in that case had filed a second Chapter 11 petition that would have had the effect of modifying its obligations under the previously confirmed plan, thereby enabling the debtor to evade the terms of that plan. The court dismissed the case as a bad faith filing. 56 B.R. at 58. The court in *In re Northampton Corp.*, 39 B.R. 955 (Bankr.E.D.Pa.1984), similarly declined to permit a serial Chapter 11 filing where the debtor sought to submit a new reorganization plan. The *Northampton* court observed the Code's general prohibition against modification of substantially consummated plans, noting that in some cases "[t]he filing of a chapter 11 petition, with an eye toward curing defaults arising under a previously confirmed chapter 11 plan, is so

akin to modifying the previous plan" as to be impermissible. *Id.* at 956. The court refused to allow the debtor in that case to evade its responsibilities through the filing of successive Chapter 11 petitions, concluded that it had "cause" under section 1112(b) for converting the case to Chapter 7 and converted the case.

Section 1112(b) provides that "the court *may* convert a case under this chapter to a case under chapter 7 of this title or may dismiss a case under this chapter, whichever is in the best interest of creditors and the estate, for cause...." 11 U.S.C. § 1112(b) (emphasis supplied). Although section 1112(b) does not explicitly provide that a lack of good faith may constitute cause,[9] section 1129(a)(3) does require that plans be "proposed in good faith"; courts have sensibly considered bad faith to be an acceptable basis for conversion or dismissal.[10] *See In re AT of Maine*, 56 B.R. at 58; *In re Baumgartner*, 57 B.R. 513 (N.D. Ohio 1986); *In re G–2 Realty Trust*, 6 B.R. 549 (Bankr.D.Mass.1980); *see also* 5 Collier on Bankruptcy ¶ 1112.03 (15th ed. 1989).

■ The courts in *AT of Maine* and *Northampton* certainly could have concluded that in light of the Code's policy against modification of substantially consummated plans, a serial Chapter 11 filing designed to evade an existing plan was in bad faith. However, the bankruptcy court in the case before us viewed the situation here as quite different; here the debtor has not submitted a new reorganization plan with the aim of evading responsibilities un-

---

**9.** Section 1112(b) lists a number of possible examples of "cause," including

　(1) continuing loss to or diminution of the estate and absence of a reasonable likelihood of rehabilitation;

　(2) inability to effectuate a plan;

　(3) unreasonable delay by the debtor that is prejudicial to creditors;

　(4) failure to propose a plan under section 1121 within any time fixed by the court;

　(5) denial of confirmation of every proposed plan and denial of additional time for filing another plan or a modification of a plan;

　(6) revocation of an order of confirmation under 1144 of this title, and denial of confirmation of another plan or a modified plan under section 1129 of this title;

　(7) inability to effectuate substantial consummation of a confirmed plan;

　(8) material default by the debtor with respect to a confirmed plan;

　(9) termination of a plan by reason of the occurrence of a condition specified in the plan.

**10.** This is in keeping with legislative intent; the House Report states that the list of possible bases for cause "is not exhaustive. The court will be able to consider other factors as they arise, and to use its equitable powers to reach an appropriate result in individual cases." H.R. Rep. No. 95–595, 95th Cong., 1st Sess., at 405–06 (1977), U.S.Code Cong. & Admin.News 1978, pp. 5787, 6362; *see In re Nancant, Inc.*, 8 B.R. 1005 (Bankr.D.Mass.1981).

der the old reorganization plan. Rather, the new plan is for liquidation—and the bankruptcy court specifically found that "Jartran II is not an attempt to modify the terms of the Plan, but rather is a good faith admission that Jartran was unable to continue operating as a going concern." *In re Jartran*, 71 B.R. 938, 942 (Bankr.N. D.Ill.1987). There is no ground for concluding that this finding of good faith by the bankruptcy court was erroneous, nor for concluding that the bankruptcy court erred in treating the second filing as a separate case from the already confirmed and consummated *Jartran I*. Were we faced with an appeal from a confirmed liquidation plan in which Jartran effectively evaded all responsibility under the previous reorganization plan, we might have grounds for rejecting the bankruptcy court's finding. But there simply is nothing in the record presented to us at this stage that would provide the kind of glaring indication of error required for this court to substitute its judgment for that of the bankruptcy court on this issue. Further, conversion or dismissal under section 1112(b) is in the bankruptcy court's discretion ("the court *may* convert"), *see In re Sheehan*, 58 B.R. 296 (Bankr.D.S.D.1986), and we cannot discern that the court abused that discretion in refusing to convert or dismiss this case.

It is true that a number of Code provisions taken together, along with their legislative history, might contribute to an expectation that when Chapter 11 plans fail, liquidation will proceed either through conversion to Chapter 7 or through liquidation in the same Chapter 11 action. *See, e.g.,* H.R.Rep. No. 95–595, 95th Cong., 1st Sess., at 349 (1977) [House Report]; S.Rep. No. 95–989, 95th Cong., 2d Sess., at 60 (1978) [Senate Report]. Liquidations within reorganization proceedings had posed difficulties for years before the enactment of the Code, which clearly adopted a policy of permitting substantial liquidations within reorganization proceedings. 11 U.S.C. §§ 1123(a)(5)(B), 1123(b)(4); *see* 3 W. Norton, Bankruptcy Law and Practice § 59.10, at 59–9, 59–10 (1981); Anderson and Wright, *Liquidating Plans of Reorganization,* 56 Am.Bankr.L.J. 29 (1982); Hurley, *Chapter 11 Alternative: Section 363 Sale of All of the Debtor's Assets Outside a Plan of Reorganization,* 58 Am.Bankr.L.J. 233, 233–34 (1984). As one commentator has written, "bringing in new parties and attorneys in the middle or at the end of the reorganization process to begin a liquidation in a chapter 7 proceeding is generally not the most practical, efficient, expeditious, or most effective manner of liquidating estates," Anderson and Wright, *Liquidating Plans of Reorganization,* 56 Am. Bankr.L.J. at 47, and the Code provisions take account of this concern. Although "the purpose and spirit" of Chapter 11 remains reorganization rather than liquidation, *id.* at 50; *see also* Epstein, *Consequences of Converting a Bankruptcy Case,* 60 Am.Bankr.L.J. 339, 339 (1986), the new provision permits a failed reorganization plan to proceed to liquidation without conversion. When this happens, the creditors have the protections owed under the original Chapter 11 plan, including any administrative expense priority to which they are entitled by virtue of their participation in the reorganization. *See In re Mushroom Transp. Co.,* 78 B.R. 754 (E.D.Pa. 1987). Alternately, section 1112(b) permits conversion to Chapter 7 of Chapter 11 plans that cannot be effectuated. In cases of conversion, creditors may still be entitled to administrative expense priority for preconversion assumed executory contracts or unexpired leases under section 365(g). *See In re Chugiak Boat Works,* 18 B.R. 292 (Bankr.D.Alaska 1982); *see also In re Multech,* 47 B.R. 747 (Bankr.N.D.Iowa 1985). This court has not yet determined that creditors are indeed entitled to administrative expense priority for preconversion assumed executory contracts or leases.[11]

---

**11.** And, as the court in *In re Chugiak Boat Works* noted, the current provisions of the Code are not entirely clear on this point. Before the Code was enacted, the Act unambiguously provided that "[w]hen a contract which is entered into or assumed in a superseded proceeding is rejected, the resulting liability shall constitute a cost of administration of the superseded proceeding." 11 U.S.C. § 778(b) (1967) (amended

However, it is certainly an open question in this court (and creditors aware of the decision *In re Chugiak Boat Works* would be cognizant of the possibility) that preconversion assumed contracts or leases might be entitled to administrative expense priority. As the court in *In re Chugiak Boat Works* recognized, this kind of protection would serve the important purpose of encouraging creditors to participate in reorganization plans, for "there would be little chance of attracting potential customers or creditors to deal with a financially troubled debtor if the performance of the debtor's obligations to those entities was not somehow assured." 18 B.R. at 298. The Code's prohibition on modification after substantial performance serves this same goal, as does use of a "good faith" filing requirement to prevent debtors from evading responsibilities under prior plans.

Here, however, the bankruptcy court has determined that no such evasion is intended by the second Chapter 11 petition—and that the second petition, rather than seeking to modify the Master Leases, has a purpose entirely distinct from that of the first petition (liquidation). *See* Lander & Warfield, *A Review and Analysis of Selected Post–Confirmation Activities in Chapter 11 Reorganizations*, 62 Am. Bankr.L.J. 203, 232 ("if a confirmed plan does not itself provide an exclusive remedy upon default and if the second bankruptcy case is intended to effect the liquidation of the reorganized debtor's assets, the courts seem willing to permit successive filings."). Although it is conceivable that subsequent developments could shed doubt upon the validity of the bankruptcy court's findings, there is no reason at this point to suspect that they were erroneous. Fruehauf may well have bargained in the first Chapter 11 action under the assumption that it was guaranteed an administrative priority should the plan fail, whatever the form of the liquidation.[12] But, as we have noted, there is no prohibition of serial good faith Chapter 11 filings in the Code—indeed, there is not even a time limit on successive

---

1978). Now the issue is dealt with by two provisions. Section 365(g) states that

> ... the rejection of an executory contract or unexpired lease of the debtor constitutes a breach of such contract or lease ... if such contract or lease has been assumed under this section [or under a confirmed chapter 11 plan] ... [and] if before such rejection the case has been converted under section 1112 ...—
>
>> (i) immediately before the date of such conversion, if such contract or lease was assumed before such conversion; or
>> (ii) at the time of such rejection, if such contract or lease was assumed after such conversion.

Section 503(b) provides that "the actual, necessary costs and expenses of preserving the estate" will be treated as administrative expenses. *In re Chugiak Boat Works* views these two sections, taken together, as a strong indication that the Code had embraced the previous policy of the Act, guaranteeing administrative priority for claims based upon subsequently breached assumed contracts. We do not reach the issue in this case; we merely observe the possibility that section 365(g) may provide such protection, a possibility of which creditors who had checked the relevant caselaw would be aware.

**12.** This might be understandable, given that experts in the field have apparently described the universe of possible alternatives as encompassed by conversion to Chapter 7 or liquidation within the same Chapter 11 proceeding. *See, e.g.,* the discussion on conversion in Collier on Bankruptcy:

> If a chapter 7 liquidation would maximize the amount received by creditors, conversion is proper. This analysis is complicated to a degree by the fact that liquidation is one of the means by which a chapter 11 plan can be effectuated. Thus, the court must compare the costs and benefits of a chapter 7 versus a chapter 11 liquidation.

5 Collier on Bankruptcy ¶ 1112.03(2)(d)(ii) (15th ed.1989). Here the benefits of conversion (it is assumed that conversion would mean conversion to Chapter 7) are weighed against those of liquidating within the existing Chapter 11 proceeding. Conversion to a distinct Chapter 11 action, or dismissal so that the parties can institute a new Chapter 11 action, are not considered as possibilities. Of course, these discussions all center upon the options available should problems arise *during* a reorganization; here we are confronted with a decision to liquidate reached, arguably, *after* the first Chapter 11 was substantially consummated. That is why we reach the result we do. However, it remains the case that the Code, legislative history and commentators to date simply do not consider the possibility of a situation in which a completely new liquidating Chapter 11 case could be used to deal with problems that arise in the course of consummation of a prior Chapter 11 plan. This is relevant not to our disposition, but to parties' possible expectations.

filings parallel to that imposed on individuals or family farmers. 11 U.S.C. § 109(g). As the district court noted, Congress could easily have included repeat corporate debtors in that section; its failure to do so indicates that corporate debtors are exempt from even the minimal constraints on serial filings imposed on other kinds of debtors. *Cf. NLRB v. Bildisco & Bildisco*, 465 U.S. 513, 522–23, 104 S.Ct. 1188, 1194, 79 L.Ed.2d 482 ("Obviously, Congress knew how to draft an exclusion for collective-bargaining agreements when it wanted to; its failure to do so in this instance indicates that Congress intended that § 365(a) apply to all collective bargaining agreements covered by the NLRA."). Once a bankruptcy plan is effectuated, all indications from the Code would incline us to treat the reorganized entity as we would any other company.

Fruehauf has, of course, argued strenuously that a successive Chapter 11 filing for the purpose of liquidation is unfair to it because it has put large amounts of equipment—essential to the carrying on of Jartran's business—at risk only with the assurance of an administrative priority if efforts to salvage Jartran's business failed. Fruehauf contends that permitting a successive filing for purposes of liquidation may discourage creditors from agreeing to Chapter 11 arrangements in the future since this outcome in many cases deprives creditors of protection in the event the arrangements fail. This is an outcome, however, that the Code does not exclude, given good faith. Therefore, despite the persuasive policy arguments made by Fruehauf, it is not for us to invalidate the outcome without some more plausible basis in the statute.

Furthermore, although the framers of the Code were concerned about protecting creditors, they had other policy concerns, including "rationaliz[ing] the various forms of relief available to a failing business, making business reorganization a quicker, more efficient procedure, and providing greater protection for debtors, creditors, and the public interest." House Report at 5. The consolidation of Chapters X and XI

of the old Act into Chapter 11 of the new Code, without any limitation as to serial filings, had as its aim a more rational, flexible method for permitting commercial debtors to continue in business while ensuring that similarly situated creditors were treated equitably. *See* House Report at 126, 177–78; Senate Report at 3, 10. The Code clearly by its terms permits serial good faith Chapter 11 filings, even where the effect is to circumvent protections generally afforded creditors under the Code's provisions for failed reorganizations. With that knowledge, creditors may begin to bargain for more protection in reorganizations, or may, as Fruehauf argues, resist participating in reorganizations altogether. All this is mere speculation, however, and further consideration of potential policy problems and their remedies would rest with Congress rather than the courts.

### C.

Once the second Chapter 11 filing is determined to be both distinct from the first filing and proper, Fruehauf's administrative priority claims are fairly easily dismissed. To receive an administrative priority in *Jartran II*, Fruehauf must demonstrate its claims relative to *Jartran II*; an administrative priority in *Jartran I* does not translate to an administrative priority in *Jartran II*. Fruehauf asserts several bases for its claim of administrative priority in *Jartran II*.

First, Fruehauf claims a priority under section 365(g) of the Bankruptcy Code, which provides:

> Except as provided in subsections (h)(2) and (i)(2) of this section, the rejection of an executory contract or unexpired lease of the debtor constitutes a breach of such contract or lease—
>
> . . . . .
>
> (2) if such contract or lease has been assumed under this section or under a plan confirmed under chapter 9, 11, 12 or 13 of this title—
>
> (A) if before such rejection the case has not yet been converted under section 1112, 1307, or 1208 of this title, at the time of such rejection; or

(B) if before such rejection the case has been converted under section 1112, 1307, or 1208 of this title—

(i) immediately before the date of such conversion, if such contract or lease was assumed before such conversion; or

(ii) at the time of such rejection, if such contract or lease was assumed after such conversion.

11 U.S.C. § 365(g). Fruehauf insists that leases assumed under *Jartran I* fall within the scope of this provision. However, we are now dealing with *Jartran II*, and the leases have not been assumed in this proceeding. Thus section 365(g)(2) is inapplicable on its face.

 Second, Fruehauf claims a priority under 11 U.S.C. section 503(b), which permits administrative expense claims for "the actual, necessary costs and expenses of preserving the estate." 11 U.S.C. § 503(b)(1)(A). However, Fruehauf seeks priority for expenses incurred prior to *Jartran II*—namely, the balance due under leases assumed in *Jartran I*, the costs of marshalling and repossessing equipment done prior to *Jartran II*, and the balance due on defaulted payments by Jartran for lost, stolen and destroyed vehicles. None of these expenses were actual or necessary for preserving the estate in *Jartran II*, which was not yet extant.

 Finally, Fruehauf claims a section 503 priority for expenses incurred in marshalling and repossessing equipment since the filing of *Jartran II*. In order to qualify as "actual and necessary" administrative expenses, expenditures must benefit the estate as a whole rather than just the creditor claimant. *In re Jartran*, 71 B.R. 938, 945 (Bankr.N.D.Ill.1987); *see also In re Patch Graphics*, 58 Bankr. 743, 746 (Bankr.W.D.Wis.1986); *In re McK, Ltd.*, 14 B.R. 518, 520 (Bankr.D.Colo.1981). The bankruptcy court in this case ruled that Fruehauf acted in its own interest in repossessing its own equipment, a finding that is well-supported and sensible. Of course, if after the filing of *Jartran II* Fruehauf marshalled equipment not its own, for the benefit of the estate as a whole, then it is entitled to an administrative expense to reimburse it for its efforts in that regard.

II.

This court has accepted jurisdiction of this interlocutory appeal pursuant to 28 U.S.C. section 1292(b). Because the Bankruptcy Code at no point interdicts good faith serial Chapter 11 filings, the bankruptcy court acted properly in refusing to dismiss the second Chapter 11 petition at issue in this case. Once this second action is deemed a separate and independent Chapter 11 case, Fruehauf may not claim an automatic administrative priority in the second case simply by pointing to the provisions of the original reorganization Plan. Whether the final disposition in the second Chapter 11 case will be adequate as regards Fruehauf we cannot determine at this point, perhaps a good indication of the value of awaiting a final order before seeking an appeal in some cases.

AFFIRMED