In re SHEPHERD OIL, INC., an Arizona corporation, Debtor.

UNITED STATES of America and United States Department of Energy, Plaintiffs,

v.

SHEPHERD OIL, INCORPORATED, Defendant.

In re SHEPHERD OIL, INCORPORATED, an Arizona corporation, Debtor.

UNITED STATES of America and United States Department of Energy, Plaintiffs,

v.

SHEPHERD OIL, INCORPORATED and Scott H. Phillips, Trustee of Shepherd Oil, Incorporated, Defendants.

Bankruptcy Nos. B–84–2015–PHX–SSC, B–88–1378–PHX–SSC. Adv. Nos. 88–621, 88–622.

United States Bankruptcy Court, D. Arizona.

July 11, 1990.

Richard G. Patrick, Asst. U.S. Atty., Phoenix, Ariz. and Diane Polinger, U.S. Dept. of Energy, Washington, D.C., for the U.S. Dept. of Energy.

Brian W. Hendrickson, Tempe, Ariz., for trustee Scott H. Phillips.

Scott H. Phillips, Houston, Tex., trustee.

P. Wyman Shepherd, Lafayette, La., William Novotny, Mariscal, Weeks, McIntyre & Friedlander, and Richard M. Lorenzen, O'Connor, Cavanagh, Anderson, Westover,

Killingsworth & Beshears, Phoenix, Ariz., for Niro Atomizer, Inc.

Elizabeth Magner, Lemle & Keleher, New Orleans, La., and Thomas J. Salerno, Streich, Lang, Weeks & Cardon, Phoenix, Ariz., for Citibank, N.A.

Stanford E. Lerch, Kennedy, Wilson & Lerch, Phoenix, Ariz., for petitioning creditors.

## MEMORANDUM DECISION AND ORDER

SARAH SHARER CURLEY, Bankruptcy Judge.

### PRELIMINARY STATEMENT

This matter comes before the Court on the request of the Trustee, as Defendant, that he be granted summary judgment on the remaining claims in this adversary proceeding.

The United States of America and the United States Department of Energy ("D.O.E.") commenced these adversary proceedings on September 22, 1988.

The Trustee previously agreed that a judgment could be entered against him on Claim V, which alleged a claim for breach of contract damages as a result of the admitted default of Shepherd Oil, Incorporated, the Debtor herein, pursuant to the Confirmed Plan of Reorganization and/or the Amended Compromise Agreement entered into between the Debtor and the D.O.E.

In Claim VI of the Complaint, the D.O.E. requested that the priority of its lien on the assets of the Debtor's bankruptcy estate be determined by this Court. However, since a separate adversary proceeding had already been commenced by the Trustee to determine the priority of all liens against the Debtor's assets, and hence there was a serious question of law as to whether the D.O.E. had joined all necessary parties in

its adversary proceeding, the D.O.E. withdrew Claim VI, without prejudice to asserting such a lien claim, if any, in the lien-ranking adversary proceeding only. An Order was entered by this Court dismissing said Claim VI without prejudice on November 8, 1989.

The Trustee filed his Motion for Summary Judgment on April 20, 1989. The Trustee also simultaneously filed his Statement of Facts.

On September 3, 1989, the Trustee and the D.O.E. stipulated to certain facts for purposes of the Trustee's Motion for Summary Judgment.

On October 10, 1989, the D.O.E. filed a Response to the Motion for Summary Judgment addressing substantively the issues raised by the Trustee, and a separate Statement of Facts.[1]

On October 13, 1989, the Trustee filed his Reply and a pleading entitled "Trustee's Rule 11 Response to Plaintiffs' Statement of Facts and Defendants' Supplemental Statement of Facts."

The aforesaid documents were followed in quick succession by:

1. Trustee's Revision to Defendants' Supplemental Statement of Facts, filed October 24, 1989;

2. D.O.E.'s Motion to file its Opposition to the Trustee's Response under Local Rule 11 to Plaintiffs' Statement of Facts and Defendants' Supplemental Statement of Facts, filed October 25, 1989; and

3. Defendants' Opposition to Plaintiffs' Motion to File Opposition to Trustee's Response under Rule 11 to Plaintiffs' Statement of Facts and Defendants' Supplemental Statement of Facts and Motion to Strike, filed October 25, 1989.

On October 13, 1989, the Trustee filed a Motion to Strike the D.O.E.'s Affidavit of Innokenty Tolmachoff. This Motion was

---

1. Initially, the D.O.E. requested certain discovery before responding to the Trustee's Motion for Summary Judgment. The Court granted the D.O.E.'s Motion in part under *Federal Rule of Civ.P. 56(f)* (Bankruptcy Rule 7056) concerning additional discovery on August 31, 1989.

The D.O.E. did substantively respond to the Motion for Summary Judgment. The Court executed an Order on October 16, 1989 which set forth the final briefing schedule on the Trustee's Motion for Summary Judgment.

granted by the Court on December 6, 1989 at oral argument on the Trustee's Motion for Summary Judgment.

On October 20, 1989, the Trustee filed a Motion to Strike the Affidavit of Richard D. Dodd. This Motion was denied at oral argument on the Trustee's Motion for Summary Judgment.

At the oral argument on October 26, 1989, on the Trustee's Motion for Summary Judgment, it became clear to this Court that the material issues of fact for this Court to determine the Motion for Summary Judgment were not in dispute. There remained factual disputes between the parties, but these disputes were not relevant to the current issues before this Court.

The D.O.E. filed its pleadings on behalf of itself and the United States of America. The Trustee filed its pleadings on behalf of himself and the Debtor. Although the Trustee stipulated to certain facts for the purposes of his Motion, counsel for the Trustee stated at oral argument that the Debtor might wish to contest all or a portion of the facts in another proceeding.

This Court has jurisdiction over this matter, and this is a core proceeding. 28 U.S.C. §§ 1334 and 157(b)(2)(A), (E), (K), and (O). This Memorandum Decision and Order shall constitute findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052.

## FACTS

On August 6, 1984, Shepherd Oil Incorporated, an Arizona corporation, filed a petition under Chapter 11 of the United States Bankruptcy Code. This Chapter 11 proceeding was assigned Case No. B–84–2015–PHX–LO (now Case No. B–84–2015–PHX–SSC). This Chapter 11 proceeding shall be referred to as S.O.I.–I.

The Debtor proceeded toward confirmation. On October 3, 1985, in S.O.I.–I, the Judge executed an Order confirming the Debtor's "Second Amended Plan of Reorganization Dated January 31, 1985, As Modified on May 17 and 28 and October 3, 1985" ("S.O.I.–I Plan").

The S.O.I.–I Order of Confirmation provided, in pertinent part:

A. The Modified Plan is confirmed and is made a part of this Order.

The D.O.E. was a claimant in Class 19 under the S.O.I.–I Plan. Members of Class 19 were to be paid, on the effective date of the Plan, the *pro rata* portion of their respective claims. (Article VII, Paragraph A. of the S.O.I.–I Plan, Page 15.)

The provisions regarding the distributions to Class 19 Claimants and the relevant provisions of the S.O.I.–I Plan granting the Class 19 Claimants a lien on the Debtor's assets are set forth in the following pertinent portions of the S.O.I.–I Plan:

The allowed claims in Classes 19, 20, and 22 shall be combined and treated on a *pro rata* basis as follows, except as otherwise specifically provided:

1. The claims shall bear interest at the Unsecured Creditor Rate from January 1, 1985, until paid in full.

2. The holders of the claims shall receive *pro rata* payments of the following percentages of the Net Cash Flow of Shepherd Oil (as defined below), which payments shall be determined semi-annually on December 31 and June 30 of each year, beginning December 31, 1985; the payments shall be made on or before March 31 and September 30 of each year, respectively; the calculation of Net Cash Flow as of December 31, 1985, shall be based on the period from January 1, 1985 through December 31, 1985,[2] while all subsequent calculations of Net Cash Flow shall be based on each succeeding six-month period;

(a) Forty Percent (40%), from January 1, 1985 through June 30, 1986;

(b) Forty–Five Percent (45%), from July 1, 1986 through June 30, 1987; and,

(c) Fifty Percent (50%), from July 1, 1987 until paid in full.

3. The Net Cash Flow payments shall first be applied to accrued interest and then to the allowed claim as of May 1, 1985.

---

**2.** Article VII, Paragraph G of the S.O.I.–I Plan, Page 17.

4. "Net Cash Flow" for Shepherd Oil for each period shall be calculated as follows and shall equal:

(a) Gross cash receipts received by Shepherd Oil (not including capital contributions or proceeds of loans); *less* (except for those items set forth in Paragraph 5 below),

(b) Ordinary operating and administrative expenses, including, but not limited to, purchases of molasses, chemicals, gasoline, and other raw materials, utility costs, transportation expenses, taxes, and compensation for employees other than officers; and,

(c) Officers' salaries not to exceed, for any fiscal year, $120,000 for President, $70,000 for Vice–President, and $45,000 for Secretary; and,[3]

(d) Repair, maintenance, and capital improvements not to exceed $1,500,000 for any fiscal year; and,

(e) Payments for debt service and to all classes of creditors and to priority creditors pursuant to the Plan or Order of the Bankruptcy Court; and,

(f) Payments for all administrative expenses incurred during or in relation to the Chapter 11 proceedings of Shepherd Oil, including those paid to professional persons such as attorneys, accountants, and appraisers.[4]

. . . .

9. At a minimum, and whether or not there is positive Net Cash Flow, Shepherd Oil shall make payments to the claimants equalling the allowed claims as if they were being paid in equal semi-annual installments, including interest on the allowed amount of the claims at the Unsecured Creditor Rate (amortized), the first semi-annual payment being deemed due on June 30, 1986 and all subsequent payments thereafter being deemed due on each succeeding December 31st and June 30th until and including June 30, 1993 ("Minimum Payments"); payments from Net Cash Flow and the Initial Payment shall be credited and applied toward compliance with the Minimum Payments, and such payments in excess of the Minimum Payments in any period shall accumulate and be applied toward subsequently-required Minimum Payments.

10. The amount due the claimants shall be secured by a *pro rata* blanket lien in all of the Debtor's property wherever located, both real and personal; the blanket lien shall be evidenced by a formal separate order of the Court in recordable form, which shall be recorded in Maricopa County, Arizona, Jefferson Davis Parish, Louisiana, and wherever property of Shepherd Oil is located; the blanket lien shall be wholly subordinate to the liens of all holders of claims in Classes 1 through 17 and to any replacement or other secured financing not to exceed in total $15,000,000.00. . . .[5]

11. The payments to holders of claims in Classes 19, 20, and 22 and their security interests granted hereby shall be supervised by a special trustee who shall be kept informed by the Debtor of all pertinent facts concerning the Debtor, including the payments to creditors and status of assets of the Debtor. Said special trustee shall be the Chairman of the Unsecured Creditors' Committee or any other individual designated by a majority vote of said Committee.[6]

. . . .

N. If Shepherd Oil fails to comply with the terms of the Plan, the holders of claims in any class may proceed against Shepherd Oil and its property in order to enforce the Plan and collect the obligations of Shepherd Oil hereunder by bringing or taking any appropriate action under Federal or State law, in Bankruptcy Court or other court of competent jurisdiction, and, in the case of a secured claimant, in accordance with any applicable and existing mortgage, deed of trust,

---

3. Article VII, Paragraph G of the S.O.I.–I Plan, Page 18.

4. Article VII, Paragraph G of the S.O.I.–I Plan, Page 19.

5. Article VII, Paragraph G of the S.O.I.–I Plan, Page 20.

6. Article VII, Paragraph G of the S.O.I.–1 Plan, Page 21.

security agreement, or other instrument evidencing a lien or encumbrance.[7] ...

At any time during the term of this Plan, Shepherd Oil may obtain additional or replacement secured loans which loans shall be entitled to a first and prior lien and encumbrance in and to certain of Shepherd Oil's property and assets located at or near Jennings, Louisiana, which shall result in the subordination of the liens, encumbrances, rights, and privileges of the following classes of creditors under the Plan who have a right, title, claim, or interest in such property and assets and who are described below. The proceeds of said loans shall be applied toward payment of the indebtedness owed to the claimants in the following classes until said proceeds are exhausted:

| Creditor Level | Class |
|---|---|
| One | 1 |
| Two | 4 and 5 |
| Three | 14 |
| Four | 2 |
| Five | 3 |
| Six | 6 |
| Seven | 7 |
| Eight | 19, 20, and 22 [8] |

Any creditor in any Creditor Level not paid in full by the loan proceeds shall be fully subordinated to the liens of the new lender(s). Any Creditor Level involving multi-claimants or multiple classes shall be subordinated and paid loan proceeds on a *pro rata* basis within each Creditor Level. The Debtor will make its best effort to obtain financing which will not require the subordination of any Creditor Level.[9]

The Trustee and the D.O.E. agreed that the Class 19 Claimants were to be paid a *pro rata* portion of their claims based upon specified percentages of the Debtor's Net Cash Flow, commencing March 31, 1986.

On March 8, 1985, the D.O.E. filed a Proof of Claim for $9,943,328.00 for alleged violations by the Debtor of the D.O.E.'s Mandatory Petroleum Price and Allocation Regulations for the underreporting of price-controlled crude oil receipts.

On December 20, 1985, the Debtor filed an Objection to the D.O.E.'s Claim.

Article IX of the S.O.I.–I Plan provided that pending a resolution of any objection to a claim, the payments on the claim that were otherwise due were to

be reserved in interest-bearing accounts and set aside sufficient to satisfy the claim as filed by the claimant or as scheduled by the Debtor. Said accounts shall be located at the Allied Bank of Texas and shall be segregated, fully-insured, and not subject to set-off by Allied Bank of Texas.[10]

The Debtor proceeded with its operations postconfirmation. These operations included a modification or conversion of its facilities in Jennings, Louisiana to that of a corn/ethanol plant. The Debtor also owned a ranch in Arizona.

The postconfirmation operations of the Debtor permitted it to pay fifty percent of all claims in Class 19, except the claim of the D.O.E.

For a period of time, the Debtor reserved the sum of $341,486.000 for the D.O.E. in a certificate of deposit at Great Western Bank & Trust (now Citibank, N.A.) in Phoenix, Arizona; in April of 1987, the Debtor withdrew the money from that account.

The Trustee has stipulated for purposes of his Motion that the vast majority of the D.O.E.'s *pro rata* share, including but not limited to the sum of $341,486.00, was used to build the Debtor's corn/ethanol plant or to otherwise enhance the Debtor's refinery.

The Debtor was required to deposit the full amount of the D.O.E.'s *pro rata* claim in an interest-bearing segregated account pending resolution of the objection to the claim.

The D.O.E. commenced settlement negotiations with the Debtor in September of 1986 to resolve the Debtor's Objection to the D.O.E.'s claim.

---

7. Article VIII, Paragraph N of the S.O.I.–I Plan, Page 25.

8. Article X, S.O.I.–I Plan, Page 27.

9. Article X, S.O.I.–1 Plan, Page 28.

10. Article IX, S.O.I.–1 Plan, Page 26.

In proceedings before this Court, commencing in March of 1987, the Debtor conceded it was in default to its creditors concerning the remaining payments under the S.O.I.–I Plan.

Although the S.O.I.–I Plan granted a lien to the Class 19 claimants on the Debtor's facility in Louisiana, the Official Unsecured Creditor's Committee did not present an Order to this Court specifically granting such a lien until June 23, 1987. Article VII, Paragraph G of the S.O.I.–I Plan had required the submission of such a "formal separate order." (*See supra* note 6 and accompanying text.) The Order was not recorded in Arizona or Louisiana until after that date. Therefore, the Debtor had proceeded with its operations for a substantial period of time postconfirmation, including the granting of liens or encumbrances to certain creditors, prior to the recordation of the lien of the D.O.E. and other Class 19 claimants.

Irrespective of the payment defaults by the Debtor, the D.O.E. negotiated a second settlement agreement with the Debtor. (The first agreement was never approved by this Court.) A Hearing was scheduled on the approval of this second agreement for December 7, 1987. At the Hearing, counsel for the Debtor withdrew the agreement. The Debtor's counsel stated that the parties were negotiating a *third* agreement. However, the Debtor paid the D.O.E. the sum of $150,000 pursuant to this agreement. The Debtor did not otherwise perform pursuant to the agreement.

On January 20, 1988, the Debtor and the D.O.E. entered into an Amended Compromise Agreement ("Amended Compromise Agreement"), which this Court approved on June 15, 1988. The Amended Compromise Agreement revised and lowered the D.O.E.'s $9,943,328.00 claim for alleged oil-pricing violations by the Debtor to the sum of $4,050,000.00, plus the payment of interest per annum commencing January 1, 1988. The sum of $150,000.00 previously paid to the D.O.E. was deemed to be accrued interest owed to the D.O.E. by the Debtor prior to January 1, 1988.

Because of the Debtor's ongoing payment defaults under the S.O.I.–I Plan, several creditors filed an involuntary Chapter 11 proceeding against the Debtor on February 23, 1988, which was assigned Case No. B–88–1378–PHX–SSC (S.O.I.–II).

For purposes of this Motion for Summary Judgment and irrespective of the Debtor's payment defaults, the Trustee and the D.O.E. agreed that by March 2, 1988, the Debtor had substantially consummated the S.O.I.–I Plan.

On March 2, 1988, Scott H. Phillips was appointed as interim Trustee of the assets of S.O.I.–II. On March 9, 1988, the Debtor consented to an Order for Relief under Chapter 11 being entered against it. On April 5, 1988, Mr. Phillips was appointed, on a permanent basis, the Trustee of S.O.I.–II.

On May 27, 1988, the D.O.E. filed a claim in S.O.I.–II in the amount of $4,050,000, plus accrued interest, because of the Court approval of the Amended Compromise Agreement.

Based upon the payments made to other Class 19 Claimants, the D.O.E. is now seeking the sum of $2,025,000, plus accrued interest, representing 50 percent of its claim, as amended.

For purposes of this Motion for Summary Judgment, the Trustee stipulates with the D.O.E. that *prior* to the appointment of the Trustee, the Debtor (through its employees and officers) defrauded the D.O.E. of its *pro rata* share of its Class 19 Claim, "with the intent to so defraud and permanently deprive the D.O.E. of said funds." (Stipulated Facts of Trustee and D.O.E. filed on September 3, 1989, as revised by the Trustee on October 24, 1989.)

The D.O.E. apparently never requested that the Chairman of the Unsecured Creditors' Committee, the "special trustee" under the S.O.I.–I Plan, or its counsel, take any action on its behalf.

Pursuant to the S.O.I.–I Plan, this special trustee was contemplated to ensure the Debtor's compliance with the Plan as to the Class 19 claimants. (*See supra* text accompanying note 6.)

## LEGAL ISSUES

(I.) Whether an individual creditor in a bankruptcy proceeding may assert a claim in a subsequently filed bankruptcy proceeding to impress a constructive trust or equitable lien on the assets of the subsequently filed bankruptcy proceeding.

(II.) Whether the Debtor's Plan of Reorganization in the original Chapter 11 proceedings has created an express trust for the benefit of an individual creditor as to the assets that are a part of the subsequently filed Chapter 11 proceedings.

## DISCUSSION

A Motion for Summary Judgment may be granted if there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. *Anderson v. Liberty Lobby*, 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). As to the claims to be decided by this Court, the parties have stipulated to the relevant facts. Any factual issues which remain between these parties are not relevant to this Court's decision. The issue before this Court is solely which party is entitled to judgment based upon the stipulated facts.

### I

The legal issues presented are complicated by the two pending Chapter 11 proceedings before this Court. Although it is most unusual for the debtor to have two such pending Chapter 11 proceedings, such a scenario is not without precedent. *In re Jartran, Inc.*, 886 F.2d 859 (7th Cir.1989) (serial Chapter 11 filings permissible if filed in good faith).

The Debtor's efforts to reorganize by operating its plant in Jennings, Louisiana failed. However, the Debtor was able to make substantial payments to its creditors pursuant to the confirmed plan of reorganization, as amended. The parties in this matter have stipulated at oral argument that the S.O.I.–I Plan was substantially consummated.

The sale of the Debtor's facility in Jennings, Louisiana was approved by this Court in S.O.I.–II. The liquidation (not operation) of this facility, and all other assets of the Debtor, now serve as the basis for payment to the claimants of the S.O.I.–II estate.

As previously stated, S.O.I.–II was commenced by certain creditors filing an involuntary Chapter 11 petition against the Debtor. Although most creditors pursue the remedy of conversion or dismissal of the original Chapter 11 proceedings under 11 U.S.C. § 1112, the creditors of this Debtor elected to file a separate involuntary Chapter 11 petition when the Debtor was unable to continue with the payments as required under the S.O.I.–I Plan. The Debtor subsequently consented to the entry of an Order for Relief in the involuntary proceedings.

The propriety of these serial Chapter 11 filings is not currently an issue before this Court.

Therefore, in analyzing this matter this Court must distinguish between the treatment of the D.O.E. claim under the confirmed plan of reorganization, as amended, in the S.O.I.–I proceedings and the treatment of the D.O.E. claim in the S.O.I.–II proceedings.

■ The priority that a creditor may have in the initial Chapter 11 proceedings does not necessarily carry over in the subsequently filed Chapter 11 proceedings if the debtor has engaged in serial filings of Chapter 11 petitions. *Jartran, supra.* (Administrative claim in previously filed Chapter 11 proceedings is an unsecured claim in a subsequently filed Chapter 11 proceedings.) As a result, the rights and remedies of a creditor may be substantially altered or impacted upon in subsequently filed Chapter 11 proceedings.

In S.O.I.–II, after notice and hearing, various Judges of this Court entered Orders granting Citibank, N.A. a lien on the Debtor's assets with priority over all other secured and unsecured claims. This lien resulted from Citibank, N.A. providing critical financing to the Trustee in S.O.I.–II. The Trustee was operating the Debtor's facility on a limited basis to prepare and preserve it for sale.

Although no plan of reorganization has yet been proposed in S.O.I.–II, this type of claim of Citibank, N.A., as well as the claims of secured creditors in S.O.I.–II and the claims of secured creditors in S.O.I.–I, may have priority over the D.O.E. in the S.O.I.–II proceedings.

The Trustee readily concedes that the D.O.E. has a breach of contract claim in the S.O.I.–II bankruptcy proceedings. This claim results from the Debtor's breach of the S.O.I.–I Plan and the Debtor's breach of the Amended Compromise Agreement entered into with the D.O.E. and approved by this Court at a Hearing on February 12, 1988.[11] The liquidated amount of these damages is the sum of $4,050,000 as set forth in the Amended Compromise Agreement.

Because of the numerous secured claims now being asserted against the proceeds received from the sale of the Debtor's assets, it is unlikely that the breach of contract claim of the D.O.E. in the S.O.I.–II proceedings or the Class 19 Lien claim of the D.O.E. from the S.O.I.–I proceedings will be paid. Therefore, the D.O.E., by asserting a constructive trust or equitable lien claim, is attempting to assert a priority over all other secured and unsecured creditors to the assets held in the S.O.I.–II proceedings.

The decisions of *In re North American Coin & Currency, Ltd.*, 767 F.2d 1573 (9th Cir.1985), *modified* 774 F.2d 1390 (9th Cir. 1985), *cert. denied sub nom. Torres v. Eastlick*, 475 U.S. 1083, 106 S.Ct. 1462, 89 L.Ed.2d 719 (1986), and *In re Tleel*, 876 F.2d 769 (9th Cir.1989) clearly dictate a contrary result.

In *North American Coin*,[12] the debtor, an Arizona corporation whose operations involved the buying and selling of precious metals, experienced cash flow problems prior to filing a bankruptcy petition. Under an emergency plan, the principals of the Debtor created a bank account denominated a "Special Trust Account" into which they placed the funds of customers who had entered into new buy/sell transactions with the debtor. The express purpose of this account was "to protect new … customers in case the company did not survive." *Id.* at 1575. Moreover, at the time of the filing of the bankruptcy petition, the funds in the "Special Trust Account" remained intact. The customers asserted that the *North American Coin* trustee held the funds in constructive trust for them.

Although the Ninth Circuit stated that property which is "truly in trust" is not property of the estate under 11 U.S.C. § 541(d), the Court believed that between excepting the funds from the estate under a constructive trust theory or providing the funds for all creditors, the stronger policy under the Bankruptcy Code was the ratable distribution to all creditors requiring the funds to be treated as property of the estate. Thus, the debtor's placing of funds in an account labeled a "Special Trust Account" and the prepetition creation of a constructive trust could not defeat the rights of all creditors to have the funds in the Account turned over to the trustee for distribution to all creditors.

■ The funds reserved for the D.O.E. under the S.O.I.–I Plan were not placed in an account labeled "trust"; they were simply placed in a certificate of deposit, which later matured. The funds were later used to improve the Debtor's facility in Jennings, Louisiana.

Even if this Court ruled that the fraud perpetrated upon the D.O.E. created a constructive trust under some theory of law, this Court would be required to direct the turnover of any funds or assets for the benefit of all creditors in the S.O.I.–II proceedings. As previously stated by this

---

**11.** The Court Order approving the Amended Compromise Agreement, however, was not approved by the Court until June 15, 1988, because of the appointment of a Trustee in the S.O.I.–II proceedings.

**12.** 767 F.2d 1573 (9th Cir.1985), *modified* 774 F.2d 1390 (9th Cir.1985), *cert. denied sub nom. Torres v. Eastlick*, 475 U.S. 1083, 106 S.Ct. 1462, 89 L.Ed.2d 719 (1986).

Court, the *Jartran* decisions [13] indicate that a creditor in the first Chapter 11 proceedings may very well have a claim of a *lower priority* in the subsequently filed Chapter 11 proceedings. The creditor in Jartran–I saw its administrative expense claim reduced to the lower priority unsecured claim in Jartran–II.

The strong policy concerns stated in *North American Coin* dictate that the claim of· the D.O.E. in S.O.I.–I be reduced in priority in S.O.I.–II. Under a *Jartran* theory, those creditors which provided secured funding to the Trustee at a time when the Debtor's facility in Jennings, Louisiana was being prepared for sale or those creditors which perfected their secured claims against the Jennings, Louisiana facility prior to 1987 when the Class 19 claimants (which included the D.O.E.) finally acted should naturally have a priority in payment over the D.O.E. to any funds received from the sale of the Debtor's facility. In this case, the Debtor may have defrauded the D.O.E., but the Debtor no longer has an interest in any of the property. As a result of the S.O.I.–II proceedings and the appointment of a Trustee therein, the Trustee is vested with all right, title, and interest in the Debtor's property. The Trustee must now act as a fiduciary to protect the rights of all creditors to the assets of S.O.I.–II.

In *Tleel*,[14] Chbat, the debtors and two other parties purchased certain property in August of 1978. The debtors then acquired the interests of the other co-owners. The debtors then sold the property to a third party on a land sale contract. Two years. later, Chbat filed a complaint in State Court alleging that the debtors entered into an oral partnership agreement concerning the property. This oral agreement supposedly entitled Chbat to place a constructive trust on any proceeds received by the debtors from the real property. The debtors then filed a bankruptcy petition in December of 1984. Chbat filed a similar proceeding concerning a constructive trust in the Bankruptcy Court. In July of 1985, a trustee was appointed in the debtor's bankruptcy proceedings. Finally, the property was sold on June 20, 1986 for the sum of $465,000, with the debtors' equity equal to $225,000.

One of the issues to be determined by the Court was whether the trustee's strong arm power under Section 544(a)(3) [15] could defeat the rights of Chbat under a constructive trust theory. The Court cited with approval its decision in *North American Coin*, but stated that it need not even reach the issue again of whether a party was entitled to a constructive trust under applicable State law and whether the entitlement to such a constructive trust was consistent with the policies under the Bankruptcy Code. The Court determined that since the trustee acquired the rights and remedies of a *bona fide* purchaser under State law pursuant to Section 544(a)(3), the trustee had no actual or constructive notice of Chbat's interest, and the trustee could avoid the interest of Chbat in the property.

■ As in *Tleel*, the D.O.E. has only requested that this Court impose a constructive trust on the Debtor's assets. No constructive trust has actually been imposed. A constructive trust is a flexible, equitable remedy; it is more tenuous· than a resulting trust. *Tleel, supra*, 876 F.2d at 772, n. 7. As set forth hereinafter, this Court believes there are other remedies that the D.O.E. should be pursuing rather than requesting this Court to impose an

**13.** *In re Jartran, Inc.*, 886 F.2d 859 (7th Cir. 1989), *aff'g*, 87 B.R. 525 (N.D.Ill.1988), *aff'g*. 71 B.R. 938 (Bankr.N.D.Ill.1987).

**14.** 876 F.2d 769 (9th Cir.1989).

**15.** 11 U.S.C. § 544(a)(3) provides that:
(a) The trustee shall have, as of the commencement of the case, and without regard to any knowledge of the trustee or of any creditor, the rights and powers of, or may avoid any transfer of property of the debtor or any obligation incurred by the debtor that is voidable by—. ...
(3) a bona fide purchaser of real property, other than fixtures, from the debtor, against whom applicable law permits such transfer to be perfected, that obtains the status of a bona fide purchaser and has perfected such transfer at the time of the commencement of the case, whether or not such a purchaser exists.. ...

equitable remedy that will only be detrimental to all other creditors of S.O.I.–II, none of said creditors, having been shown at this time to have participated with the Debtor in the perpetration of a fraud on the D.O.E.

If this Court were to conclude that somehow a constructive trust were created prior to the filing of S.O.I.–II, then the D.O.E.'s argument must necessarily fail because of the Trustee's strong arm powers under Section 544(a)(3) in S.O.I.–II and the reasoning of *Tleel.*

■ Moreover, the Trustee's strong arm powers under Section 544(a)(3) are superior to any rights that the D.O.E. may claim under section 541(d).[16] The D.O.E. urges that if a constructive trust were created prepetition, that is, as a result of the S.O.I.–I Plan and the provisions thereunder, or the reservation of funds by the Debtor at least for a period of time, then the assets that may be traced by the D.O.E. are somehow excepted as assets of the estate under Section 541(d). However, *Tleel* stated that Sections 544(a)(3) and 541(d) must be read in conjunction. Clearly all beneficial or equitable interests in property cannot be excepted under Section 541(d) from a debtor's estate in all circumstances. *Tleel, supra*, 876 F.2d at 773. The D.O.E.'s reliance on the S.O.I.–I Plan and the recordation of the Class 19 lien in Arizona and Louisiana in 1987 is certainly not the oral partnership arrangement, really the "secret deals" or "inchoate claims", with which the *Tleel* Court was concerned. Nevertheless, the D.O.E. is requesting that it succeed to a priority over all secured creditors that, for instance, assisted with the financing of the facility in S.O.I.–II when the Trustee was attempting to preserve the assets of the estate, were accorded a higher priority and properly perfected their liens prior to the D.O.E. pursuant to the same S.O.I.–I Plan that the D.O.E. relies on, or provided financing to the Debtor between the S.O.I.–I and S.O.I.–II proceedings and obtained a lien prior in time to that of the D.O.E. as a Class 19 claimant. These creditors have not at this time been shown to have participated in any fraud upon the D.O.E. *Under the factual circumstances herein, this Court finds that the better policy is to protect the rights of these other creditors by permitting Section 544(a)(3) to dictate that the assets become a part of the S.O.I.–II estate not subject to any constructive trust of the D.O.E.*

The facts involved in this proceeding do not support a finding that one creditor should be entitled, as a matter of law, to a constructive trust or equitable lien on any assets of this bankruptcy estate. The reliance of the D.O.E. on the decision of *In re Kaiser*, (*Salomon v. Kaiser*, 722 F.2d 1574 (2d Cir.1983) is misplaced. Such case law as *In re Kaiser* and *McMerty v. Herzog*, 661 F.2d 1184 (8th Cir.1981), *cert. denied sub nom. Herzog v. Endeco, Inc.*, 455 U.S. 943, 102 S.Ct. 1439, 71 L.Ed.2d 655 (1982), consider the sequestration of assets by a debtor, and a wrongful diversion of bankruptcy estate assets by a trustee-in-bankruptcy, respectively. However, the party which asserts the right or remedy of a constructive trust is the trustee or successor trustee only. The D.O.E. has been unable to cite this Court to any case law which supports the proposition that an *individual creditor* in a subsequently filed Chapter 11 proceeding for which a trustee has been appointed has the standing to assert that a constructive trust should be impressed on funds that may have been wrongfully diverted to construct or improve the Debtor's facilities in Jennings, Louisiana.

## II

■ An alternative theory advanced by the D.O.E. is that the S.O.I.–I Plan creates

---

**16.** 11 U.S.C. § 541(d) provides that:

Property in which the debtor holds, as of the commencement of the case, only legal title and not an equitable interest, such as a mortgage secured by real property, or an interest in such a mortgage, sold by the debtor but as to which the debtor retains legal title to ser- vice or supervise the servicing of such mortgage or interest, becomes property of the estate under subsection (a)(1) or (2) of this section only to the extent of the debtor's legal title to such property, but not to the extent of any equitable interest in such property that the debtor does not hold.

an express trust in favor of the D.O.E., which must be specifically enforced in the S.O.I.–II proceedings. If such a theory were followed, the D.O.E. would presumably seek to rely on Section 541(d) to except out a portion of the assets in the S.O.I.–II proceedings as the *res* for the trust.

The D.O.E.'s reliance on an express trust theory naturally flows from many of the terms used in bankruptcy proceedings as to a debtor in possession or a trustee. Case law from the Ninth Circuit has referred to the role of a debtor in possession as a "trustee" when the principals of the debtor have been engaged in self-dealing. The Ninth Circuit stated in one case that

> Once a debtor files a bankruptcy petition, the property it then possesses, as well as funds acquired thereafter, become the property of the estate. 11 U.S.C. § 541(a). The debtor-in-possession is not free to deal with this property as it chooses, but rather holds it in trust for the benefit of creditors, just as would a trustee. [Citations omitted.]

*In re Technical Knockout Graphics, Inc.,* 833 F.2d 797, 802 (9th Cir.1987) (Debtor designated preconfirmation payments to satisfy Debtor corporation's trust fund liabilities, thus protecting Debtor's responsible persons from personal liability).

In the decision of *In re Rigden,* 795 F.2d 727, 730 (9th Cir.1986), the majority opinion recognized the duties of a trustee to be similar to those imposed on a trustee under applicable State law; that is, "that measure of care and diligence that an ordinary prudent person would exercise under similar circumstances." This standard would be applicable to a debtor in a Chapter 11 pursuant to 11 U.S.C. § 1107(a).[17]

However, the use of the term "trustee" is to indicate that the debtor must conduct itself as a fiduciary to maximize the distribution to all creditors. *In re Technical Knockout Graphics,* 833 F.2d 797, 802–03

(9th Cir.1987); *In re Benny,* 29 B.R. 754, 760 (N.D.Cal.1983).

*Black's Law Dictionary,* (5th ed. 1983), defines a fiduciary as

> ... a person holding the character of a trustee, or a character analogous to that of a trustee, in respect to the trust and the confidence involved in it and the scrupulous good faith and candor which it requires.

Therefore, although the standard of conduct may be the same for a fiduciary or a debtor in possession, that is, the utmost good faith in dealing with the property of others, the debtor or the trustee does not create an express trust when it proposes and confirms a plan of reorganization in a Chapter 11 proceeding. Certainly a plan of reorganization is a binding contract. However, the Trustee concedes that the D.O.E. is entitled to a breach of contract claim, and damages therefor, as a result of the inappropriate distribution to the D.O.E. under the S.O.I.–I Plan.

In determining whether an express trust has been created, the Court notes that the S.O.I.–I Plan was confirmed pursuant to the Bankruptcy Code and Rules. Therefore, there is a certain awkwardness in attempting to graft applicable State law concepts of trust law on documents that are creatures of Federal law. Moreover, the fundamental purposes of the Bankruptcy Code and Rules are not served by declaring the S.O.I.–I Plan to be an express trust.

Certainly the Bankruptcy Court is frequently required to review and apply the applicable State law in determining the interests of parties in property that is part of the bankruptcy estate. *Butner v. United States,* 440 U.S. 48, 99 S.Ct. 914, 59 L.Ed.2d 136 (1978); *In re North American Coin & Currency, Ltd.,* 767 F.2d 1573 (9th Cir.1985), *modified* 774 F.2d 1390 (9th Cir. 1985), *cert. denied sub nom. Torres v.*

---

**17.** 11 U.S.C. § 1107(a) provides that:

(a) Subject to any limitations on a trustee serving in a case under this chapter, and to such limitations or conditions as the court prescribes, a debtor in possession shall have all the rights, other than the right to compen-

sation under section 330 of this title, and powers, and shall perform all the functions and duties, except the duties specified in sections 1106(a)(2), (3), and (4) of this title, of a trustee serving in a case under this chapter.

*Eastlick,* 475 U.S. 1083, 106 S.Ct. 1462, 89 L.Ed.2d 719 (1986); *In re American Continental Corp.* 105 B.R. 564 (Bankr.D.Az. 1989). The purpose is to prevent forum shopping, and to provide a consistent body of law in the State and Federal Courts. The happenstance of being in Federal Court should not dictate the result. However, an exception to this rule necessarily arises if the application of the applicable State law is in contravention of Federal law. One of the most fundamental purposes of the Bankruptcy Code and Rules is to accord an equal distribution to creditors within the same class. 11 U.S.C. §§ 522, 544, 545, 547, 548, 549, 506(d), 551, 553(b), 724(a), 726, 1122, 1123, 1124, and 1129; *North American Coin, supra.* The relative priority of a particular class of creditors in the overall distribution scheme is another fundamental purpose. (For instance, 11 U.S.C. §§ 503, 507, 726, and 1129.) One Court has even stated that the Bankruptcy Code creates a "statutorily imposed trust". *In re Weber,* 99 B.R. 1001, 1009–10 (Bankr.D.Utah 1989). Although this Court need not decide the issue today of whether the Bankruptcy Code creates a statutorily imposed trust, the Court in *Weber* notes that the status of a debtor acting as a "statutory fiduciary" is insufficient to transform into an express trust a stipulation entered into in the debtor's Chapter 11 proceedings. *Id.* at 1010.

The D.O.E. and the Trustee refer to State law in an effort to determine whether the S.O.I.–I Plan is an express trust. This is wholly unnecessary. The S.O.I.–I Plan was proposed and confirmed pursuant to Federal law—specifically, Chapter 11 of the Bankruptcy Code. The S.O.I.–I Plan refers to its own priorities of distribution. The Bankruptcy Court would normally apply this distribution scheme but for the fact that intervening creditors have acquired claims between the confirmation of the S.O.I.–I Plan and the filing of the S.O.I.–II proceedings, and creditors have advanced funds, and acquired a priority as a result thereof, pursuant to Court Orders entered in the S.O.I.–II proceedings. How the creditors of S.O.I.–I and S.O.I.–II are ultimately to be treated has yet to be determined.

To apply underlying common law or statutory provisions concerning trusts of either Arizona or Louisiana to determine whether the S.O.I.–I Plan is an express trust would frustrate the fundamental purposes of the Bankruptcy Code of equality of distribution to creditors in the same class and the relative priorities of creditors as designated under the S.O.I.–I Plan and Bankruptcy Court Orders.

Therefore, because of the paramount importance of Federal law, this Court cannot consider the S.O.I.–I Plan to be an express trust.

This Court need not determine whether the law of Arizona or Louisiana would independently preclude the S.O.I.–I Plan from being interpreted as an express trust.[18]

**18.** The Trustee's arguments on this issue are certainly the most persuasive. The S.O.I.–I Plan refers to payment of creditors claims and to a segregation of assets concerning those claims as to which an objection has been interposed. However, the language of the S.O.I.–I Plan (*see supra* notes 2–10 and accompanying text) does not set forth the requisite intent to create a trust under either Louisiana or Arizona law. *Brooks v. Valley National Bank,* 113 Ariz. 169, 548 P.2d 1166 (1976); *Carrillo v. Taylor,* 81 Ariz. 14, 27, 299 P.2d 188 (1956). *La.Rev.Stat.Ann.* §§ 9:1731, 9:1761 and 9:1781 (1964). Arizona follows the Restatement of the Law in the absence of contrary authority. *Bank of America v. J & S Auto Repairs,* 143 Ariz. 416, 694 P.2d 246 (1985). Under the Restatement of the Law, the requisite intent has not been shown. *Restatement (Second) of Trusts* (1959) ("*Restatement*") §§ 2, 3 (elements of a trust), 16A and *comment* a (recognizes the existence of a fiduciary relationship without the creation of an express trust), and 23, 24 (how the manifestation of an intent to create a trust is exhibited). There is arguably under the S.O.I.–I Plan no specifically enforceable duties of the debtor as "trustee" to perform. *Restatement* § 25 and *comment* b. Finally, even if a lien is created under some theory of Arizona trust law in favor of the D.O.E., it would not have priority over, nor vitiate, the liens obtained on the property by third parties. *Restatement* § 273 and *comments* a, b, and c (interest of third party with security interest or lien in real property is to be protected even if breach of fiduciary duty by trustee [interest protected if value given and no notice that trustee was committing breach] or if no breach of duty by trustee). Articles VII, VIII and X of the S.O.I.–I Plan make it clear that a debtor-creditor relationship was to continue,

The D.O.E. is not left without a remedy. As this Court stated at oral argument, to the extent that the Debtor made a distribution to all but one of the Class 19 claimants that was excessive given the limited relative value of the assets now held by the Trustee because of the extensive secured claims in S.O.I.–I and S.O.I.–II, the Trustee should request said Class 19 claimants to return a portion of the funds received by them to be turned over to the D.O.E. to effectuate a *pro rata* distribution amongst all members of the Class. If the claimants do not voluntarily comply, the Trustee may commence proceedings in this Court to require such a turnover of funds. *In re Frontier Enterprises, Inc.*, 70 B.R. 356 (Bankr.C.D.Ill.1987).

Both the Trustee and the D.O.E. agree that the S.O.I.–I Plan has been substantially consummated. Although the Trustee indicates that some assets of the Debtor in the S.O.I.–II proceedings may be free of any encumbrances or liens of secured creditors and hence available potentially for future distribution to the D.O.E. to correct the inequitable distribution to the D.O.E. under the S.O.I.–I Plan, a future distribution is a mere expectancy at this time. Therefore, the Trustee should move expeditiously against the other Class 19 claimants to correct the inequitable distribution to the D.O.E.

To the extent that one or more creditors participated in the fraud with the Debtor against the D.O.E., the Court notes that the D.O.E. may commence an adversary proceeding seeking an equitable subordination of said creditor(s)' claims pursuant to 11 U.S.C. § 510.

The D.O.E. is also free to pursue claims against the Debtor's principals or other appropriate parties to the extent that said parties intentionally or negligently breached a duty owed to the D.O.E. *In re Rigden*, 795 F.2d 727, 730–33 (9th Cir.1986).

These issues may be determined at a later date.

Based upon the foregoing,

IT IS ORDERED granting the Trustee's Motion for Summary Judgment on the remaining claims. The Trustee is to lodge an appropriate form of judgment with this Court, and serve said form of judgment on five (5) days' notice to the Department of Energy. If no objection is filed to the form of judgment, this Court shall sign it.

---

with the Class 19 claimants and others obtaining a lien on the Debtor's assets. Although the Debtor was to segregate funds for the payments of claims to which objections had been interposed, the Net Cash Flow from the Debtor's operations determined the actual amount to be segregated. Depending on the Debtor's operations, it was possible that little would be so segregated. The intent of the parties to create a lien on certain assets does not create an express trust. *In re Foam Systems Co.*, 92 B.R. 406 (Bankr. 9th Cir.1988).